Elmer Stewart Rhodes III
LAW OFFICE OF ELMER STEWART RHODES
432 E. Idaho Street, STE C-231
Kalispell, MT 59901
Telephone: (406) 882-4242
FAX: (406) 755-8335
E-mail: rhodeslegalwriting@gmail.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Marie Jones; <br> John Lavern Jones; <br><br>     Plaintiffs, <br> v. <br><br> Town of Quartzsite; <br> Jeffrey Gilbert and Sondra Gayle <br>  Gilbert, Husband and Wife; <br> Officer Xavier Frausto, #15, and <br> Terry Frausto, Husband and <br> Wife;  Alex Taft; Al Johnson; <br> Individual Does I-X <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     **COMPLAINT** <br> )     **§1983 ACTION** <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

    Plaintiffs, Jennifer Marie Jones and John (a.k.a. "Jack") Lavern Jones, for their Complaint against all Defendants allege as follows:

### Jurisdiction

    1.    This action is brought pursuant to 42 U.S.C. § 1983.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2002 to declare

the rights of the parties and to grant all further relief found necessary and proper. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (a).

2.      This Court has personal jurisdiction over the defendants, who are located in the District of Arizona.

3.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(a) in that the defendants are subject to personal jurisdiction within the District of Arizona and the events that give rise to this action occurred within the District of Arizona.

4.      Plaintiffs, Jennifer Marie Jones and John Lavern Jones  are adults residing within the County of La Paz, Town of Quartzsite, State of Arizona.

5.      Defendant Town of Quartzsite (referred to as "the Town") is a municipality organized under the laws of the state of Arizona and owns, operates, manages, directs and controls the Quartzsite Police Department, which employed other defendants.

6.      Defendant Jeffrey Gilbert (referred to as "Chief Gilbert") was at all relevant times the Chief of the Quartzsite Police Department, and employed by the Quartzsite Police Department. Defendants Jeffrey Gilbert and Sondra Gayle Gilbert, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona. At all times relevant, Defendant Jeffrey Gilbert held the position of Chief of Police in and for the Town of Quartzsite. All actions taken by Defendant Jeffrey Gilbert were on behalf of the marital community.  Over a span of years, Chief Gilbert carried out and directed the carrying out of over 109 unlawful (felony) ACJIS inquires on Plaintiff Jennifer Jones, and over 263 unlawful ACJIS inquiries on Plaintiff John Lavern Jones, as documented in DPS Report DR 2011-027462,

released to the public in September 2012.  These unlawful ACJIS inquires are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiffs, with Chief Gilbert, acting under color of law and pursuant to the policies of the Town of Quartzsite, approved of, directed, supervised, and participated in the illegitimate and unlawful ACJIS inquiries which accompanied unlawful arrest and imprisonment, without probable cause, of Plaintiffs on account of their perceived political expression, because of their opposition to the policies of the Town and of Chief Gilbert, because of  Plaintiff Jennifer Jones' activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Chief Gilbert is named herein in his individual capacity.

7.     Defendant Officer Xavier Frausto, #43 (referred to as "Officer Frausto"), was at all relevant times a Police Officer employed by the Quartzsite Police Department. Defendants Xavier Frausto, and Terry Frausto, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona.  At all times relevant, Defendant Xavier Frausto held the position of Police Officer in and for the Town of Quartzsite.  All actions taken by Defendant Xavier Frausto were on behalf of the marital community. Over a span of years, Defendant Officer Frausto, acting under color of law and pursuant to policies of the Town, participated in the carrying out of over 109 unlawful (felony) ACJIS inquires on Plaintiff Jennifer Jones, and over 263 unlawful ACJIS inquiries on Plaintiff John Lavern Jones, as documented in DPS Report DR 2011-027462, released to the public in September 2012.  These unlawful ACJIS inquires are part of an ongoing campaign and conspiracy to violate the rights of plaintiffs,

including but not limited to wrongful arrest, malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiffs, on account of their perceived political expression, because of their opposition to the policies of the Town and of Chief Gilbert, because of  Plaintiff Jennifer Jones' activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Defendant Officer Frausto is named herein in his individual capacity.

8.     Defendant Alex Taft was at all relevant times residing in La Paz County, Arizona.  At all times relevant, Defendant Alex Taft held the position of Town Manager for the Town of Quartzsite.  Over a span of years, Defendant Alex Taft, pursuant to policies of the Town, directed the intentional, targeted harassment of Plaintiffs and conspiracy to violate Plaintiffs' rights, including the carrying out of over 109 unlawful (felony) ACJIS inquires on Plaintiff Jennifer Jones, and over 263 unlawful ACJIS inquiries on Plaintiff John Lavern Jones, as documented in DPS Report DR 2011-027462,  released to the public in September 2012.  These unlawful ACJIS inquires are part of an ongoing campaign and conspiracy to violate the rights of plaintiffs, including but not limited to wrongful arrest, malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiffs, on account of their perceived political expression, because of their opposition to the policies of the Town and of Chief Gilbert,

because of  Plaintiff Jennifer Jones' activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Defendant Alex Taft is named herein in his individual capacity.

9.      Defendant Al Johnson was at all relevant times residing in La Paz County, Arizona.  At all times relevant, Defendant Al Johnson held the position of Assistant Town Manager for the Town of Quartzsite.  Over a span of years, Defendant Al Johnson, pursuant to policies of the Town, directed the intentional, targeted harassment of Plaintiffs and conspiracy to violate Plaintiffs' rights, including the carrying out of over 109 unlawful (felony) ACJIS inquires on Plaintiff Jennifer Jones, and over 263 unlawful ACJIS inquiries on Plaintiff John Lavern Jones, as documented in DPS Report DR 2011-027462, released to the public in September 2012.  These unlawful ACJIS inquires are part of an ongoing campaign and conspiracy to violate the rights of plaintiffs, including but not limited to wrongful arrest, malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiffs, on account of their perceived political expression, because of their opposition to the policies of the Town and of Chief Gilbert, because of  Plaintiff Jennifer Jones' activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Defendant Alex Taft is named herein in his individual capacity.

10.     The fictitiously named Defendants Individual Does I-X in the caption to the Complaint are individuals who may have in some manner contributed to Plaintiffs' injuries and damages and are therefore liable.   The true names for said Defendants are unknown to Plaintiffs at this time.   Once the identities of these Defendants are discovered, leave of Court will be sought to amend this Complaint accordingly.  The Doe defendants are named herein in their individual capacities.

## Complaint

### I.     Factual Allegations

11.     Plaintiffs are among the self-styled activists" named by Town Attorney Martin Brannan in a Town Press Release.  Plaintiffs have been targeted for abuse by the Quartzsite Police because they speak out against the corrupt Town government, because Jennifer Jones publishes a newspaper that is editorially opposed to several members of Town government, and also because she dared to run for public office against members of the Town Council.  As a result, both Jennifer Jones and her husband John Jones have been repeatedly arrested on trumped up, bogus charges, and subjected to bogus charges (which were subsequently dismissed), fines and bail.

12.     As part of that clear pattern of intentional targeting and conspiracy to subject Plaintiffs to harassment, intimidation, wrongful arrest, and false charges, Plaintiffs' names were unlawfully run through Arizona's Criminal Justice Information System (ACJIS), with Jennifer Jones' name being run at least 109 times and John Jones' name being run at least 263 times (known at this time, which number may increase as further investigations are conducted), according to DPS Report DR 2011-027462.  These

searches were done without probable cause, good cause (during a valid investigation) or warrant, in violation of Plaintiffs' Fourth Amendment right to be free from unreasonable searches, in violation of their right to due process, and in violation of their right to privacy. There is no law allowing unwarranted and illegal searches like this.  To the contrary, such abuse of the ACJIS system is a felony crime.  Thus, it constitutes a violation of Plaintiffs' Fourteenth Amendment right to due process and equal protection under the law.

13.    The motive for running Plaintiffs' names unlawfully through ACJIS was retaliation and intimidation as part of the ongoing conspiracy to suppress and silence Plaintiffs, and to violate their civil rights.   Plaintiffs have been outspoken critics of Chief Gilbert and the corrupt Town government. As such, these actions against them, and other "activists," by the Town have been carried out with evil intent and with the intent to inflict emotional distress and to suppress free speech and political participation by political opponents.

14.    Now that the DPS report has been made public, Plaintiffs' names and reputation will forever be tarnished. As such, the Town has invaded their right to privacy and painted them in a false light. Similarly, the Town has defamed them.   And the Town has created more emotional distress for Plaintiffs, since they will forever be concerned how police officers in any future police interactions will (over)react when they see their records (which may have been one of the goals), with their names having been run through ACJIS over and over again, like common criminals.

15.     As the DPS report shows, Town Management was made aware that Chief Gilbert and Sgt. Frausto were running these unauthorized ACJIS inquiries, including when many of the Town's Police Officers complained to AZ POST.  But instead of acting to correct or discipline Chief Gilbert and Sgt. Frausto, and put a stop to this abuse, the Town fired those officers who complained about the unlawful ACJIS inquiries.

16.     The fact that Town Management did nothing to restrain Chief Gilbert, and in fact fired the complaining police officers, demonstrates that Town Manager  Alex Taft, Assistant Town  Manager Al Johnson, and the Town Council as a whole, not only failed to supervise, but acted to cover up Gilbert's malfeasance and to knowingly facilitate the ongoing unlawful ACJIS inquiries.

17.     The harassment of political opponents in Quartzsite has not been confined to Plaintiffs, as is well documented in the May 10, 2011 letter issued to the Town Council and Town Manager by ten out of thirteen of the officers serving in the Quartzsite Police Department, under the letterhead of the Quartzsite Police Officers Association (available online at http://www.scribd.com/doc/59823583/Quarlzsite-Police-Officers-Association-Letter-regarding-Police-Chief).

18.     That letter from the ten Quartzsite officers stated that Chief Gilbert intentionally and improperly targets citizens for political persecution and retaliation in the form of trumped up and fabricated citations and arrests.  In that official letter, those ten courageous and principled whistle-blowing officers expressed a formal vote of no-confidence in the Chief, and stated that he should be removed from office.

19.     That letter from the ten Quartzsite police officers was delivered to each member of the Town Council and also to the Town Manager.

20.     The letter from the ten Quartzsite police officers was also delivered to the Arizona Peace Officer Standards and Training Board (AZPOST) on May 11, 2011, requesting an investigation into wrongdoing by Chief Gilbert.

21.     The officers also filed a complaint and with the Arizona Department of Public Safety, Major Crimes Division.

22.     Among the allegations brought by the officers against Chief Gilbert in that May 10, 2011 letter were that: "**He runs license plates just to find out names of people whose vehicles are parked at businesses/residences of people he doesn't like. Not for an investigation, but to gain personal Information about people for his political benefit. He runs criminal history reports through NClC to try to find "dirt" on candidates or citizens supporting the candidates he does not like** .... **He orders officers to pull over and arrest/cite violations of citizens he feels are against him or he doesn't like. Not because they have committed a violation that he wants enforced equally, but because it is someone he doesn't like. Clearly this is a misuse of his power.**" (emphasis added).  While that letter from the ten officers mentioned unlawful NCIC abuse, Plaintiffs were not made aware that their names in particular had been run unlawfully through the ACJIS system until the DPS report release in the fall of 2012.

23.     Even after being given that letter from the ten whistle-blowing officers, the Town Council took no action to curtail the documented abuses of citizens.

24      In addition, the officers presented their grievances yet again to the Town Council during a public meeting on June 14, 2011 (the meeting just prior to the June 28, 2011 meeting where Plaintiff Mrs. Jones was unlawfully removed from the podium and arrested while exercising her constitutionally protected right to free speech.  See Complaint in Case No. 2:12-cv-01383-JAT).   At that June 14, 2011 meeting, John Stair, at the time Vice President of the Arizona Conference of Police and Sheriffs (AZCOPS), spoke on behalf of the ten Quartzsite officers, and testified about the seriousness of the allegations against Chief Gilbert, quoting from the officers' May 10, 2011 letter (beginning at the 36:40 mark of the video available online at:

http://www.youtube.com/watch?v=R_pa3RPsrX8&feature=youtu.be)

25.     At the 42.38 minute mark of that video, Mr. Stair notes that the Town of Quartzsite, in the wake of the allegations against Chief Gilbert, which included specific allegations that he **"runs criminal history reports through NCIC to try to find 'dirt' on candidates or citizens supporting the candidates he does not like," is not following its own policy of placing an officer on administrative leave when serious allegations of criminal wrongdoing are brought against the officer.  Mr. Stair urged the Town to place Chief Gilbert on administrative leave during the pending investigation into the alleged wrongdoing.

26.     Despite the serious allegations brought by the ten Quartzsite officers against their own Chief, and despite ongoing investigations into the alleged wrongdoing by Chief Gilbert by the State of Arizona and by the F.B.I, with the La Paz County

-10-

Attorney writing the F.B.I. to request an investigation into civil rights violations by Chief Gilbert, the Town of Quartzsite has not placed Chief Gilbert, or any of the other officers accused of violating the rights of citizens and accused of criminal wrongdoing, on administrative leave, and has refused to discipline them or otherwise prevent the ongoing, and continuing pattern of false arrest, intimidation, malicious prosecution, harassment, retaliation, intentional infliction of emotional distress, abuse of power, and conspiracy to violate the civil rights of Plaintiffs and other citizens, including unlawful and improper running of ACJIS/NCIC background checks.

27.     In fact, while Mr. Stair was still speaking at the June 14, 2011 meeting, rather than giving proper consideration to those serious allegations, the Town Council, except for the Mayor, began leaving their seats and walking out of the meeting, making it very clear that the entire Town Council had no interest in hearing the officers' serious allegations of abuse of civil rights and corruption against their own Chief of Police, and clearly expressing the Town Council's intent to yet again do nothing to reign in the Chief and his complicit officers.

28.     Thus, despite being warned repeatedly that the Chief and his remaining complicit officers were violating the rights of the citizens of Quartzsite, the Town Council not only did nothing to prevent any further abuse, they in fact ordered that abuse to continue by voting to deny Plaintiff Jennifer Jones her right to free speech and ordering her removal from the subsequent meeting on June 28, 2011, and then continued to refuse to place Chief Gilbert on administrative leave, despite ongoing state and federal

investigations into his abuse of power and violation of rights, which refusal directly

facilitated, aided, and encouraged the ongoing conspiracy and campaign of harassment,

violation of rights, malicious prosecution, intimidation, intentional infliction of emotional

distress, retaliation, and conspiracy to violate the civil rights of Plaintiffs that continues

to this day.

29.     The Town of Quartzsite retained command, control, and authority over, and

was responsible for, the actions of the Defendants at all relevant times.

30.     The Town Council knowingly failed to exercise proper oversight and

discipline of the Police Department, and is in fact directly and intentionally complicit in

the violations of Plaintiffs' rights, in a long pattern of false arrest and false charges.

31.     The harassment of Plaintiffs had previously intensified after Jennifer Jones

announced her candidacy for Town Council, including three arrests and multiple

misdemeanor charges even before the June 28, 2011 arrest, and the later arrest on

December 2, 2011, all of which where subsequently dismissed.   Both Jennifer and John

Jones have suffered a string of erroneous zoning violation citations, which were also

dismissed, as well as an ongoing unjust and baseless denial of a permit to conduct their

pet grooming and boarding business, with town employees specifically instructed to

always deny Jennifer a permit, even before she has applied.

32.     That harassment by means of wrongful arrest, trumped up citations, and

petty denial of a permit for their business, continues to this day, in an ongoing avalanche

of false charges and malicious prosecution, with nearly 300 counts of trumped up zoning

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

violations being brought against Plaintiffs in 2012 alone, which they are currently

fighting.

33.     La Paz County Attorney Samuel Vederman, in his January 3, 2012 letter to

F.B.I. agent Frank Farley of the Public Corruption Unit, requested that the F.B.I. conduct

an investigation into criminal wrongdoing by Chief Gilbert and the Quartzsite Police

Department, stating: "**I believe the circumstances warrant an investigation for the**

**following reasons …. Chief Jeff Gilbert has requested felony charges against certain**

**citizens for which I believe no criminal conduct occurred, or, at the very least, did**

**not rise to the level of felony conduct: Russell Sias (Aggravated Assault on a Peace**

**Office), Jennifer Jones (Influencing a Witness), Michael Roth  (Resisting Arrest)**

**and Ed Foster (Obstructing a Criminal Investigation) …. The Town, through**

**Councilwoman Patricia Anderson, publicly criticized this office for declining to**

**prosecute Michael Roth for an incident that took place at a Town Council meeting**

**in June 2011, it is the same incident in Which Chief Gilbert requested this office**

**charge Mr. Roth with felony Resisting Arrest.**" Mr. Vederman's letter is available

online at http://aview.info/A-View/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-

01-03-FBI-letter.pdf

34.     Among those charges was listed one against "Jennifer Jones (Influencing a

witness)."  Mr. Vederman refused to bring that charge against Plaintiffs Jennifer Jones,

and instead, wrote to the F.B.I., requesting a criminal investigation into the actions of

Chief Gilbert and others within the department and Town government.   That charge was later dismissed for failure to file a complaint.

35.   That December 2, 2011 arrest of Jennifer Jones for tampering with a witness was one among a total of five (so far) false arrests against her within an ongoing and escalating pattern of harassment, intimidation, malicious prosecution, retaliation for free speech, abuse of power, and conspiracy to violate the constitutional rights of Plaintiffs, by Chief Gilbert, some of his officers, and members of the Town Council and staff, including the Defendants in this instant complaint.  That pattern of violation of rights began when Mrs. Jones became a vocal critic of the Town Council members and the Chief of Police, both as an activist and as a journalist, as well as a political opponent of members of the Town Council.

36.   As an additional indication of the bias and disparate treatment of Plaintiffs, in November, 2010 Defendants had charged both Jennifer and John with false reporting, stemming from their complaint of the video-taped trespassing and assault by building official Al Johnson, with those charges later dismissed.  However, in sharp contrast, and illustrating the unequal treatment, no one who has levied false charges against Plaintiffs has ever been charged with false reporting, no matter how obvious the fabrication, with those false charges later thrown out.

37.   As noted above, even Mr. Vederman, the La Paz County Attorney, sees a pattern and practice of targeted, malicious prosecution, false charges, false arrest, and

unequal treatment against Plaintiffs and other "activist" residents of Quartzsite, Arizona, and multiple state and federal agencies are now investigating.

38.    Mrs. Jones' first false arrest occurred on November 19, 2010, within several days after a town council meeting where Mrs. Jones publicly announced that she would be running for a Town Council position, and announced that she was starting an independent newspaper, The Desert Freedom Press, which is both a hard copy and online newspaper, with paid advertisers, published bi-monthly, with a peak circulation of 20,000 copies at the height of the tourist season.    On May 19, 2012, Mrs. Jones was nominated for the Arizona Press Club "Sledgehammer" Award for her reporting on the suspicious goings-on in the Quartzsite government.

39.  That first arrest has been followed by a spectacular number of false charges and false arrests against Jennifer Jones, including, but not limited, to the following:

| | | | | | |
|---|---|---|---|---|---|
| M-1541-CR-20100122 false reporting and obstructing government operations | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal - dismissed by Town Atty |
| | | | | | |
| M-1541-CR-20110049 simulating legal process | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal - dismissed by Town Atty |
| M-1541-PZ-20110007 zoning x 2 chg | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal - dismissed by Town |
| M-1541-CR-20110050 disorderly | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal - dismissed by Town |

| | | | | | |
|---|---|---|---|---|---|
| conduct middle finger, failure to comply | | | | | Atty |
| M-1541-PZ-20110008 zoning | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | | Quartzsite Municipal - dismissed by Town Atty |
| M-1541-CR-20110065 criminal trespass, obedience to officer, false reporting for attempting to interview police | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal - dismissed by Town Atty |
| M-1541-CR-20110085 disorderly conduct at council meeting | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal - dismissed by Town Atty |
| M-1541-CR-20110108 non criminal ordinance x 2 | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal dismissed by Town Atty |
| M-1541-CR-20110109 non criminal ordinance | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal dismissed by Town Atty |
| M-1541-CR-20110119non criminal ordinance | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | | Quartzsite Municipal dismissed by Town Atty |
| M-1541-PZ-20110019 zoning 3 counts vending without a permit and/ | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal acquitted all counts |
| M-1541-HR-20120006 protective order | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal expired |
| M-1541-HR-20120005 protective order | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | QUARTZSITE, AZ 85346 | Quartzsite Municipal denied |
| M-1541-PZ- | JENNIFER | DEFENDANT | 06/1966 | QUARTZSITE, AZ | Quartzsite |

| 20120003 setting travel trailer without construction permit, allowing property owners illegal sign, vending without permit | MARIE JONES | | | 85346 | Municipal dismissed by Town Atty |
| M-1541-SW-20130001 | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | | Quartzsite Municipal |
| witness tampering | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | LA PAZ COUNTY | La Paz County Superior vacated by County Atty for lack of complaint |
| M-1541-SW-20130001 M-1541-SW-20130002 search warrants to measure travel trailer and count dogs | JENNIFER MARIE JONES | DEFENDANT | 06/1966 | | Quartzsite Municipal 0001-not executed, 0002 executed, no arrest or citation at execution, photos taken |

40.     Plaintiff John ("Jack) Jones has been falsely arrested two times, with the first arrest on December 1, 2010 for the charge of "False Reporting to Law Enforcement" and "Obstruction- Refuse to Give True Name" and the second arrest on April 20, 2011 for the charge of "Simulating Legal Process."  Both charges were later dismissed by the Town Attorney.  In addition Officer Michelle Norris, in her interview with DPS, stated that a citizen had brought an object into the police station, in a bag, that Jack Jones allegedly touched and Chief Gilbert ordered that item to be sent to the DPS Crime lab for analysis. This item is reported to be a used quart of motor oil that an un-named person

said might have "Jack" Jones' fingerprints on it. There was no affidavit by the person turning over the "evidence" to support there having been a crime, and no knowledge of collection method, and no investigation into any alleged crime, and yet Police Chief Gilbert sent it to the Crime Lab, apparently just to have John ("Jack") Jones' fingerprints. No fingerprints were retrieved from the item. It may still be in the QPD evidence room. All of the above noted false arrests, coupled with the incredible number of times his name was unlawfully run through the ACJIS/NCIC systems, display a a clear pattern of false charges, intentional harassment, suppression of free speech and political participation, and conspiracy to violate his rights, which continues to this day.

41.     The DPS criminal investigation of Quartzsite Police Department (QPD) Chief Jeff Gilbert (DR 2011-027462) resulted in multiple audio recorded interviews of QPD officers in August of 2011, with that report being released to the general public in September, 2012.  Most of the officers interviewed were later terminated, but all were employed by the Town at the time of their respective DPS interviews.  Several of those interviews directly discuss the unlawful running of criminal background checks against Plaintiffs (with John Jones being referred to as "Jack") and other activists, while detailing all of the other actions of intentional violations of rights, including false arrest and trumped up charges.   Several also note that members of the Town Council were not only aware of those abuses, but directed them.  These officers stated the following in their interviews:

1.     **2011 08 18 DPS Interview QPD Officer William Ponce:**
         DT = Detective  WP = William Ponce

DT: did Chief Gilbert direct you to conduct traffic stops and arrest or cite anyone?
WP: "he directed me to, yes to all the above, to make traffic stops, to arrest cite people.
I wouldn't do it. I refused."
DT: "do you know the names of some of these individuals ?"
WP: "**He directed me to arrest Jennifer Jones on one occasion**."
DT: "for what?"
WP: "her alleged false reporting to law enforcement when she had an incident with code enforcement officer. Michael Roth when he had an out of state plate on the front of his vehicle. It was an Oregon plate. So he said that's illegal. Vito Austin who had out of state plates he wanted him        cited for being a resident with out of state plates."
DT: "do you remember when he asked you to do all this?"
WP: "I want to say that Jennifer Jones … probably within the last six months."
Excerpt:
DT: "The Chief has aligned himself with the Town, City Council?"
WP: "The City Council"
DT: "totally?"
WP: "yeah pretty much"
DT: "Mayor and chief are at odds?"
WP: "right"
DT: **"how about the town manager?"**
WP: **"she's with the Chief"**
DT: **"and obviously the City Council"**
WP: **"yes, and the assistant town manager also is intertwined in that mess"**
DT: **And he was a prior?**
WP: **Code enforcement officer, slash building inspector.**
DT: **and all the people that you were asked to target were politically against the city council and the chief?**
WP: **"yes. That's when we started realizing there's a pattern here and we weren't going to get involved in that."**
DT: **"… and we're basically talking about Jennifer Jones, Jack Jones, basically the List..?"**
WP: "**Jennifer Jones, Jack Jones**, Vito Austin, Richard Oldham, Michael Roth, Sean and Laurie Austin" "Russell Sias … I heard Chief tell people that they needed to stop him … These are all people that are either running for political office or supported certain people in political offices or that were trying to run … "
Excerpt:
DT: about retaliation… during the five year tenure of the chief how much retaliation have you seen if you oppose him?  When did it start?

WP:  … started about two years ago

DT: is that because he started getting involved in the politics within the town?

WP: yup. Everything was fine. He would … decent guy until the political … the first time they tried to terminate him was when Steve Bennett was the mayor that is when things changed. … that is when all this stuff started coming out. The mayor did not like how he was doing business, the amount of money that was being spent …

DT: … two years ago…?

WP:  yeah probably.

Excerpt:

DT:  "Prior to that point had he ever asked you guys as officers to start targeting people or running …

WP: "No. not to my knowledge. "

DT:  he never asked you or anyone else. And you probably would have heard from your other officers if he had been asking those officers directly to do that correct?

WP:  yes. I believe they would have told me.

DT: …"as soon as he started doing that you started hearing from your officers"

WP: yup.

DT:  they would call you up and start asking for advice?

WP: right.

DT: So prior to getting into politics he never asked you guys to do that?

WP: No.

DT:  and he was ok to work for … normal …

Excerpt:  [regarding Matt Newman]

WP: "… they got rid of him because he would not prosecute the cases that we wanted … the Jennifer Jones cases. … retaliation against him for …"

2.    **2011 08 18 DPS Interview QPD Officer Heriberto Dominguez:**

DT = Detective  HD = Heriberto Dominguez

DT: Have you seen a change from the time you first started working with the Chief?

HD: A change in himself?

DT: A change in his policies, the way he does things the way he carries himself.

HD: Well the policies keep changing as per day, I've never been involved in the policy junk. The only thing I can say about him is he spends a lot of time over at town hall and politics that's what I say.

Excerpt:

DT: When in your mind did he start targeting these individuals?

HD: **The individuals that he's targeting is when they started running for council or voicing their opinions about running for council.**

DT: Ok and when would that have been?

-20-

HD: Probably late 09 or the beginning of 2010

DT: Prior to that did he ever ask others to pull people over?

HD: That's the only time he asked me. But other officers would say he had been asking them.

HD: "The chief started targeting individuals when they started running for council or voicing their opinions about running for council".

DT:  **I'm going to give you some names Jennifer Jones, John Jones**, Vito Austin, Sean Austin, Laurie Austin, Chaunce Hamilton, Russell Sias and Michael Roth. Are these some of the individuals that (Gilbert) may be targeting?

HD: **The ones that are political John Jones, Jennifer Jones and Sias they were running for council at one time.** Vito Austin I'm not sure what the story with Vito was. And then Laurie Austin and Sean Austin they are the parents of the girl Officer Starr was seeing.

Excerpt:

DT: do you routinely stop people for out of state plates?

HD: Michael Roth he's one of the political ones he has to voice his opinion he's got a big mouth. He was just being targeted because of his political background.

3.   **2011 08 30 DPS Interview QPD Officer Felipe Rodriguez:**

DT = Detective  FR = Felipe Rodriguez

DT:  now can you explain to us why you don't have any confidence in the chief? And why you voiced concerns? Regarding the police department?

FR:  Well I have worked under about 6 maybe 7 chief of police. I've never seen none of those chiefs to tell us to go target people out in our community. And when Chief Gilbert tells us who to target, selective enforcement. We can't do that. If somebody commits a crime we will go after that person and take care of the problem, but for Chief Gilbert to tell us to target certain people I don't know.

DT:  So during the entire time you were with Parker PD and Quartzsite prior to Chief Gilbert telling you that you've never had a  police chief or supervisor tell you to do that?

FR:  (laughing) No.

DT:  Why is it that selective enforcement bothers you?

FR:  Because there are certain people here in this community that was……….regarding the chief and the city council they are pretty vocal people here … bring issues in front of the town council and for some reason the chief doesn't like those people at all and he has told me and other officers to go against these people**. To find out anything we can on them**, to arrest them and do what ever we can do. And that's what I don't agree. I have presented some of the peoples names he told me to target.

DT:  **And who would those people be?**

**FR:   I put here parties like Jennifer Jones**, Russell Sias, Michael Roth and Mayor Foster. What bothers me is if these people are committing any crimes why are we waiting for them to show up at town meetings at town hall to make an arrest. It seems to me improper to wait and make the arrest in front of all these people at are here. So that's something I don't agree with either.

DT: How many times has chief asked you to target certain people?

FR: "Not the supervisors at all. This comes from the chief of police himself. Michael Roth. The chief said I want him targeted, I want him pulled over, I want him cited

Excerpt:

DT: Who is Roth?

FR: Michael Roth is one of your anti town council people. He's pretty vocal … permanent resident … he has tried to become a council person himself.

DT: Would the chief contact you at the station and say hey, Officer Rodriguez I want you to target Michael Roth because of this?

FR: Yes, in front of other officers.

DT:  So is he a Snowbird does he go back to Oregon

FR:  No he's a permanent resident and I know he has tried to become a council person himself. But he has not won any elections himself.

Excerpt:

DT:  So would the chief contact you at the station and say hey Officer Rodriguez I want you to target Michael Roth because of this?

FR:  Yes.

DT:  And are you by yourself is it like a briefing?

FR:  Oh there is other officers. And I thin you will hear that from other officers. To me I consider that selective enforcement. I don't agree to do. And why I brought this letter of lack of confidence against Chief Gilbert.

Excerpt:

FR:  Do you want another example? On  May 10 2011 we did a drug bust on the interstate. **This lady, Jennifer Jones came into the parking lot. She wants to videotape us while we make that arrest and confiscate all those drugs. And apparently one of the officers saw that she was there and told chief Gilbert and he got  really upset. He pounded on her window "you need to get out of the car". So she got on her phone and  called Mayor Foster. Foster came over and she finally opened her door and she gets arrested for trespassing right behind town hall**. I was inside with the prisoner. I could hear a lot of screaming and yelling I thought what's going on. So I look outside and he is just really going off on the Mayor. And the Mayor is just walking away from him. He wanted nothing to do with him.

DT: You mean the chief and the mayor?

FR:  Yes the Chief and the Mayor, but the one that I could hear being really loud was the chief. The Chief ordered the Mayor to get back in his car and leave. So

Mayor Foster he complied he got in his car and left. And then, if he was to be arrested, he should have been arrested right on the spot; I don't know for disorderly conduct, I have no idea. Well that arrest didn't happen. That arrest was made here in front of all these people when he was coming to a council meeting. The Mayor was coming to a council meeting, he gets arrested… To me it was like a show of force; tried to show the public who he is, you know, Chief Gilbert. Why wait? It was five days after that incident that Mayor Foster gets arrested. There's a report on it and all these charges against him. Why would anybody do that? If he committed a crime he should have been arrested behind town hall. I didn't agree with that either. To me that's like a show of force to show all these people, these citizens of Quartzsite, that he's the chief of police, he's the boss.

Excerpt:

FR:  We have a promotion for sergeant and the chief calls me into his office and says, "You know, Rodriguez, this is your opportunity to tell me why I should elect you as a sergeant." First I said, "You know the morale in this department is really low." Chief: "Well, Why?" he said. First I said, " Well Chief, you are too politically motivated. You need to stay out of politics. We want you here at the police department not over at the town hall meetings; and always going against these people. Stay out of it chief you don't need to be in politics." Chief: "Oh, you don't understand. You have to look at the bigger picture."

Excerpt:

FR:  I told Chief I have never had a Chief tell me to target certain members of the community. I won't do that. Chief: "those people are trouble makers"

Excerpt:

DT: Was Chief, always this politically motivated? Or was there a time when you actually enjoyed working for him?

FR:  I did. The first 2 years he was great. He wasn't doing politics. He was a great guy. I really liked and respected him. **Then everything started going down hill when he started getting too much involved with politics. And then these people who dislike him, and dislike the town council, were causing a little bit of ruckus here at town hall and that's when he started getting upset and asking us to screw with them, you know.**

**DT: So approximately how long has this been going on that the chief has asked you to target certain people that oppose him or the town council?**

**FR: I can go back about 3 years.**

4.   **2011 08 18 DPS interview QPD Officer Michelle Norris:**

DT = Detective  MN = Michelle Norris

**MN: JG will go after people who are not on his political side.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MN: I've seen him target people, if it's someone that he doesn't care for in town he makes it known. It's not a big secret of who he likes and who he don't like.** The chief made multiple comments about Vito Austin. Chief came up to me and told me he wanted him (Vito) cited because he had Washington plates on his truck, but it was ok when (Vito) was doing work at the department on the wall and stuff, but now it's not ok?

**MN: there was an Injunction for harassment against Jones for blogging. "I want you to go down and arrest her (Jones) right now.",  You want me to arrest her right now for something written on a blog that may or may not have been her?" And in addition to that, we don't go and arrest people off of orders like that ever. If it's an assault, yes to where someone's life is in danger or is being threatened. There is no urgency here.**

 **MN: He (Gilbert) also asked me one time, he said the Joneses were leaving Greasewood Creek because it was the end of the season and he wanted to know where they were storing their stuff because he wanted to know who was going to help them out and store their stuff. And if we see them on the road, I don't know if any of their stuff is plated or if they have drivers' licenses, "if you see them on the road stop them, I want you to identify them". Because I (Gilbert) don't believe Jack Jones is who he says he is. He had multiple contacts with him and he (Gilbert) was trying ever way he could to identify the guy because he didn't believe through his contacts because someone had dropped off something in a bag and said, "I think Jones prints are on this send it to the crime lab." And I believe he did! This is coming from people dropping it off at the department. They're not law enforcement; they didn't collect that properly. So he had been trying to identify him.**

5.      **2011 08 18 DPS interview QPD Officer Stephen Frakes:**

 DT = Detective  SF = Stephen Frakes

SF: **Wanted me to target a guy named Vito Austin.**
DT: Did he say why?
SF: No, originally. NO. He kept saying, I know he's doing something illegal.

SF: The Chief was constantly after us, **"Find something on Vito, Find something on Vito."** The Chief, at the office, was always going, "I'll buy you dinner, I'll do this"
DT: If you find something on Vito?
Frakes: Yeah.

SF: Then he came to me and wanted an investigation on voter fraud. Primarily Vito, Vito's wife, Ed Foster, Russell Sias. I told him that's a conflict of interest, and he kept telling me "no its not". I talked to Bagby, and he agreed with me, and Chief Gilbert pressured on Bagby, and finally Bagby to Gilbert, "Okay, I'll have Williams do the case."

DT: Did the Chief allege to how he knew about the voter fraud, or what the voter fraud was?

SF: No.


6. **2011 08 11 DPS interview QPD Officer J. C. Kemp:**

DT = Detective  JK = J. C. Kemp

JK: [officers sent to Jennifer Jones' residence] **on a barking dog.  They entered a residence without a warrant. So at that time they was a she was nasty about it you know she made a big stink about it and everything  like that and the Chief was gone at the time to FBI uh was going to FBI training things. So when he got back I was called in too in front of the chief by my sergeant and my sergeant asked me directly JC do we ever enter a residence without a warrant just for the welfare of a dog. I said absolutely not. If you're that concerned about a dog you got to go get a warrant. and that was the first time I ever heard about it. I actually picked the pieces of this later on. And the Chief shook his head and he says see I told you, you can't do it. You know, explaining to the Chief of Police that there was no reason for those officers to enter. And that apparently Sgt. Frausto gave them the OK to enter. So I think that's what the problem was. The woman made such a stink that uh the Chief said he would look into it and when he finally did at a town meeting I believe or some kind of public deal he told the town council that he had investigated the matter and that it was completely unfounded that there was any wrong done by the officers. And we knew from the beginning that there was something wrong. Because otherwise why would he even have bothered to question us?**

**DT: so that stirred the pot even more for Jennifer Jones.**

**JK: Right. She knew that a warrantless search had been done and all she was asking for then was an apology from the Chief of Police and from those officers. OK but now all of a sudden you just you just gave her a soap box and trust me that thing has been brewing for three years. So, ever since that time.**

DT: OK

JK: **None of the officers were disciplined** and I don't know where they became the justification but it actually it actually got to the point where the La Paz County says our dog catcher doesn't even work for Quartzsite anymore. Or our dog

catcher is not even allowed there. So. Whatever the case may be the officers on duty at the time the sergeant on duty at the time should have known better than to have ever entered that residence. If they were that worried about that dog they should have went down and got a warrant and say hey we believe the dog is suffering we need to go in and check we need a warrant to check the welfare of it. Or I don't even know if they would have even got it from a judge but if you're that concerned about it you should have done it the right way.

**DT: the last time I checked exigent circumstances don't apply to dogs.**

**JK: Yeah. So she was in the right. And half the town at least half the town knew.** So because she is very vocal wild dirty person. Nobody in the other half of the town knew didn't take her seriously. The town council did not take her seriously. Everybody just she ended up having to go get a lawyer on her own  to try and fight it come up with money to pay a lawyer. And the lawyer took one look at her and looked at how she dressed in all these tie dyed clothes and said you know what you pay me a whole bunch of money I'll represent you. Since then mistakes have been made where he is working for her pro bono now. So it's uh it's that kind of deal he's but he started that shit himself.

DT: So based on …

JK: In an effort to change that, and because now that she has a soapbox and people that will listen to her. She is trying to turn that into a political career here. So during that time she was running for office, during this election where the mayor was running, I believe it was at that time. **And I actually have one of the council members who told me (when I reported this to 'em) you know <u>"Well this isn't actually the chief's fault. It's the council members who are telling him "hey you go, get them. Go get them. They are talking bad about us. Go after them. Go get 'em".</u> You know. And I said well that doesn't make it right. He knows what the law is and he knows he can't target specific people just because they are running against you in office. And she goes well you just got to understand the circumstances. I said well (laughs) circumstances is there is wrong and there is right.**

**Cowell told me "this isn't the chief's fault. He was told by people like Joe Winslow and Jerry Lukkasson go after them. Go get them." <u>That's why he did the ACJIS violations was because he was told to by the Council. That's what she was trying to tell me.</u>**

**JK: So, one of the instances was that is that after five o'clock at night which is after the business hours of this town and after the business hours of her dog grooming business which was parked on a private lot they sent Mr. Johnson over there to take photographs <u>to try to find any kind of violation town code violation they could charge this woman with.</u>**

DT: So he basically works code enforcement?

JK: Yeah. At that time he was only the code enforcement officer.

-26-

**JK: why did chief want stops? Selective enforcement. Prevent running for office. Personal reasons. On behalf of the City Council.**

7.    **2011 08 18 DPS Interview QPD Officer Ruben Villafana:**

DT = Detective   RV = Ruben Villafana

RV: make arrests make traffic stops = problem with chief. **aggressively talked bad about certain people in community. Mayor,** Jennifer jones Jack Jones. Gilbert claims officers made alliance with the domestic terrorism people .. referring to … the list.

RV: …**mainly it is his political involvement in the town. Telling us to target people in the community, make arrests, make traffic stops**
DT:  did the chief any of his command staff or other officer threaten you in any way?
RV:  no.
DT:  as far as picking a side at any time?
RV:  **Yeah they he's always, you know, pretty much aggressively talk bad about a certain people in the community which is you know, like the mayor,** and Jennifer Jones, and Jack Jones **and you know certain individuals and as far as recently, yeah, he has ever since we made our allegations; he says we made an alliance with what he calls the "domestic terrorism people".**
DT:  and he is referring to the Mayor and his?
RV:  yeah the Mayor …
DT:  basically the "List"
RV:  yes.

DT:  Has he ever said why he doesn't like these people?
RV:  **Pretty much because they are outspoken in the community. They are, I would say, they are just basically not afraid of him.**
**DT:  and do these people question his decisions at times?**
**RV:  Yes. Oh Yeah. Definitely. Many times.**
**DT: Why?**
**RV: They are outspoken, and not afraid of him. Question his decisions**

8.    **2011 08 18 DPS Interview QPD Officer Alejandro Rubacalva:**

DT = Detective   AR = Alejandro Rubacalva
AR: Chief JG would ask officers to keep tabs on certain officers so he could target them.

9. **2011 08 30 DPS Interview QPD Officer Herlen Yeomans:**

DT = Detective  HY = Herlen Yeomans

HY: Told to stop Ed Foster by Gilbert. For parking in a handicapped parking space. Turns out Foster has a handicapped permit…get another call from Gilbert who is parked at Pilot watching and tells him to get Foster. Gilbert wanted him to harass Foster.

10. **2011 08 18 DPS Interview QPD Officer Michelle Norris:**

DT = Detective  MN = Michelle Norris  JG =Chief Gilbert

MN: **License plate was run because it was parked in front of Jones's business.**

MN: **JG turned political. "that's my job"**

MN: JG involved offices in political events. Ice cream social

11. **2011 08 24 DPS Interview QPD Evidence Technician Linda Conley:**

DT = Detective  LC = Linda Conley  JG =Chief Gilbert

LC: JG <u>wanted to run the Joneses after they returned from a trip</u>
<u>To see if they had done anything wrong while they were gone.</u>

DT<u>:  All these times you have run Jennifer Jones and her husband Jack Jones</u>
<u>had you run them through the ACJIC system you're not sure they were ran</u>
<u>for criminal purposes or they were not ran for criminal purposes do you have</u>
<u>knowledge that at times they were ran for criminal investigative purposes and</u>
<u>other times you're not sure?</u>
<u>LC:  Well yeah one time the chief said let's do a criminal history on these</u>
<u>guys to see if they did anything while they were gone. Because they were</u>
<u>'snowbirds'. What reason is that. That's not a valid law enforcement reason</u>
<u>to run these guys to see if they did anything while they were gone for 4</u>
<u>months.</u>

LC: **JG was politically active and only ran people who were opposed to him.**
be more targeted because opposed council or chief.

LC:  And what really triggered this whole thing off was Sergeant Frausto asked me to run a license plate and he has asked me since then to run a license plate and I've run them. And it came back to my neighbor. They are an older couple, they

-28-

are snowbirds they are only here part of the year. But this year they had their daughter live with them. And she had a big dog and I have a big dog. I have snowbirds that live behind me and they are not real fond of my big dog. They have complained about my dog barking. I went home at lunch time and my dog is laid out sound asleep. The dog across the street was barking. So I called Frausto to come be a witness my dog is asleep and their dog is barking. **When Frausto asked me to run the plate and it came back to the Skeltons and I asked somebody complained about their dog again? Frausto said No they were seen driving into Jennifer Jones's business. That's not a legitimate reason to run a license plate because a vehicle goes into a dog grooming business. …**

DT:  **During the time the chief became politically active. And those people we talked about getting ACJIS run on them. Had the chief had ACJIS run and computer related inquires on anybody else in town who had done more serious crimes?**
LC:  **No, not that I can remember.** **If there were serious things I would probably remember it. I can't think of anybody that he had me run. He may have had run Dispatch on serious stuff, he didn't have me run them [emphasis added].**

42.     Even after the Town received that report in August, 2012, the Town has still taken no steps whatsoever to discipline Chief Gilbert and Officer Frausto, or to stop the unlawful abuse of the NCIC/ACJIS system, or to otherwise stop the ongoing harassment and abuse of Plaintiff or other outspoken political activists.  To the contrary, members of the Town council directed Chief Gilbert to conduct that abuse, as testified to by several of the above quoted officers during their interviews with DPS.

## II.  Claims

### FIRST  CAUSE  OF  ACTION

FIRST  AMENDMENT  RIGHT  TO  FREE  SPEECH, PRESS AND ASSEMBLY (All Defendants)

43.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

44.   Defendants violated the First Amendment free speech, free assembly, and free press rights of Plaintiffs by all of the above noted actions, including the intentional running of invalid and unlawful background checks on both of them, as well as the multiple false charges and wrongful arrests, and dozens of false fines levied against Plaintiffs, because of their hostility toward Plaintiffs' constitutionally protected political speech which was critical of Town policies and actions.

45.   As is well documented by the above noted letter of the ten Quartzsite officers, by the letter to the F.B.I. from the La Paz County Attorney, and by the multiple interviews with then-serving Quartzsite Police Department Officers, Plaintiffs have been directly targeted by the Defendants, in an ongoing pattern of false arrest, false charges, and harassment, and unlawful running of background checks against Plaintiffs all because of their political free speech and press activities – their opposition to the Town and to the Policies of Chief Gilbert.   These acts were done with malicious intent, thus punitive damages are appropriate.

46.   Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiffs' rights, privileges and immunities, as secured by the First, Fourth and Fourteenth Amendments to the United States Constitution.   Said rights, privileges and immunities include the right to free speech and press, as well as the right to peacefully assemble, the right to participate in

the political process, and the right to criticize public officials and the conduct and procedures of law enforcement officials.

## SECOND CAUSE OF ACTION-FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES, SEIZURES, FALSE ARREST, AND FALSE IMPRISONMENT (All Defendants)

47.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

48.     Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiffs' rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution.   Said rights, privileges and immunities include the right to bodily integrity, the right to be free from unreasonable searches and seizures and the right to be free from false arrest and imprisonment.   Defendants' acts were done with malicious intent, thus punitive damages are appropriate.

## THIRD CAUSE OF ACTION FIRST AMENDMENT RIGHT TO BE FREE FROM RETALIATION (All Defendants)

49.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

50.     The participation in the political process, commentary and criticizing of public officials and policy, and political demonstrations, is expression and action that is protected by the First Amendment to the United States Constitution.

51.     Defendants' detention, arrest, imprisonment, and unlawful running of background checks against Plaintiffs for engaging in constitutionally protected speech and political activity constituted unlawful retaliation in violation of their First Amendment rights.  These acts were done with malicious intent, thus punitive damages are appropriate.

## FOURTH CAUSE OF ACTION
### FOURTH AMENDMENT RIGHT TO BE FREE FROM MALICIOUS PROSECUTION (All Defendants)

52.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

53.     Defendants' actions in authorizing and/or directing and requesting the filing of criminal charges against the Plaintiffs without probable cause violated Plaintiff's Fourth Amendment right to be free from malicious prosecution.  These acts were done with malicious intent, thus punitive damages are appropriate.

## FIFTH CAUSE OF ACTION
### FAILURE TO TRAIN, ENACT AND IMPLEMENT POLICIES TO PREVENT ABUSE, SUPERVISE AND DISCIPLINE (Town of Quartzsite)

54.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

55.     The failure of Defendant Town of Quartzsite to properly train, enact policies to prevent abuse of civil rights, and failure to supervise and discipline police officers to prevent abuse and violation of constitutionally protected rights,

even in the face of overwhelming evidence of abuse and violation of rights, to the level of criminal activity, constitutes deliberate and willful indifference to the rights of those who come into contact with the Quartzsite Police Department.

56.    Plaintiffs' injuries were the direct and proximate result of Defendant Town of Quartzsite's failure to provide training and supervision to the police officers serving in its police department, and failure to place Chief Gilbert on administrative leave even after requests to do so by ten of the Quartzsite Police Department officers and by AZCOPS, even after the initiation of formal state investigations, even after being given a copy of the letter to the F.B.I. from La Paz County Attorney Samuel Vederman, requesting a federal criminal investigation for corruption and abuse of power, and even after being provided a copy of the numerous DPS interviews of QPD officers outlining the many well documented intentional violations of rights of Plaintiffs, and other activist citizens.

57.    The need for effective training and supervision of the individual Defendants, as well as the need to place Chief Gilbert and the other complicit officers on administrative leave pending investigation,  was  and should have been plainly obvious to the Town of Quartzsite policymakers.

58.    Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of the rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United

States Constitution.  Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to be free from unreasonable searches and seizures,  the right to bodily integrity, and the right to equal protection of the laws.  These acts were done with malicious intent, thus punitive damages are appropriate.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS (All Defendants)

59.   Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

60.    As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, false arrest and imprisonment, false charges, and systematic use of the administrative process and the NCIC/ACJIS background check systems as tools of oppression and intimidation were done with overt, malicious intent to stifle, chill, and violate Plaintiffs' rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution by causing them emotional distress. Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to be free from unreasonable searches and seizures, the right to bodily integrity, and the right to equal protection of the law.  There is a very well documented, overwhelmingly supported, clear pattern of intentional targeting of Plaintiffs for harassment, intimidation, and

intentional infliction of emotional distress in an attempt to chill their speech, silence them, ruin their political campaigns and ruin their business in an attempt to induce them to leave town, all of which were done with malicious intent.  Thus, punitive damages are appropriate.

SEVENTH CAUSE OF ACTION:  CONSPIRACTY TO VIOLATE THE CONSTITUTIONALLY PROTECTED RIGHTS OF PLAINTIFF (All Defendants)

61.   Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

62.   As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, false arrest and imprisonment, false charges, and systematic use of the administrative process and the NCIC/ACJIS background check systems as tools of oppression and intimidation were done with overt, malicious intent as part of a conscious conspiracy among the Defendants to stifle, chill, and violate Plaintiffs' rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.  Said rights privileges and/or immunities include the right of free speech and engaging in the political process, the right to a free press, the right to peaceably assemble, the right to be free from unreasonable searches and seizures, the right to bodily integrity, and the right of equal protection of the law.  There is a very well documented, overwhelmingly supported, clear pattern of intentional, coordinated conspiracy, and actions to further that conspiracy, to target Plaintiffs for

harassment, intimidation, retaliation, and intentional infliction of emotional distress in an attempt to chill their speech, silence them, ruin their political campaigns and ruin their business in an attempt to induce them to leave town, all of which were done with malicious intent.  Thus, punitive damages are appropriate.

EIGHTH CAUSE OF ACTION:  VIOLATING OF EQUAL PROTECTION BY SINGLING OUT PLAINITFFS FOR UNEQUAL TREATMENT FOR NO REASON OTHER THAN MALICE, AS A CLASS OF ONE.

63.   Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

64.   The Defendants inflicted unequal treatment upon the Plaintiffs for no reason other than malice, treating them radically differently than others similarly situated.   Defendants targeted Plaintiffs for background checks, arrest, false charges, prosecution, and citations, for political reasons, to prevent Plaintiffs Jennifer Jones from being able to successfully run for office, and as retaliation for constitutionally protected free speech, association, and participation in the political process, all of which are wholly unrelated to any legitimate state objective.

**Demand and Prayer for Relief** Wherefore, Plaintiffs respectfully request that the Court:

1.   Exercise jurisdiction over this action;

2.   Award appropriate compensatory damages against all Defendants;

3.    Award appropriate punitive damages against each of the Defendants since these acts were done with malicious intent, thus punitive damages are appropriate; and

4.    Grant such other relief as may be appropriate, including the award of reasonable attorneys' fees, litigation expenses, and costs.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 27th day of August, 2013.

By /s/Elmer Stewart Rhodes
Elmer Stewart Rhodes
432 E. Idaho St., Suite C-231
Kalispell, Montanan 59901
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2013, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, with a copy thereby being sent by email to Lisa S. Wahlin, attorney for Defendants.

By /s/Elmer Stewart Rhodes III