Jennifer Marie Jones
John Lavern Jones
La Posa North LTVA
PO Box 1320
Quartzsite, Arizona 85346
928-785-6318
thedesertfreedompress@yahoo.com
In Pro Se



☑ FILED ___ LODGED
___ RECEIVED ___ COPY

JUL 1 1 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Jennifer Marie Jones,
John Lavern Jones,

Plaintiffs,

v.

Town of Quartzsite, et al.,

Defendants.

**CASE NO. 2:13-CV-01770-DJH**

**PLAINTIFFS' RESPONSIVE MEMORANDUM TO DEFENDANTS' MOTION TO DISMISS**

Assigned to the Honorable Diane J. Humetewa

COMES NOW Plaintiffs, Jennifer Marie Jones and John (a.k.a. "Jack") Lavern Jones, in Pro Se, and pursuant to LRCiv 7.2(c), providing their Responsive Memorandum to the Defendants' Motion for Judgment on the Pleadings. In support thereof, Plaintiffs allege as follows:

## I. BACKGROUND

The claims asserted in the Complaint arise from a well-documented and well-publicized pattern and practice of threat, harassment and intimidation under color of

law. This began shortly after the Plaintiffs complained publicly and in writing about the warrantless search of the home of Jennifer Jones (then Jennifer Harris) without probable cause in 2008. Intimidation and harassment which initially manifested in visits by enforcement personnel in alleged response to "anonymous" complaints escalated both in frequency and severity over the next two years. Plaintiff John Jones was assaulted by then Police Chief Jeffrey Gilbert and one of his subordinate officers for peaceably videotaping in a public area where the Plaintiffs were leasing property, video viewable online at:

www.metacafe.com/watch/4511541/quartzsite_police_chief_gilbert_doesnt_understand_the_law/

Within days of Plaintiff Jennifer Jones publicly announcing her intent to run for a seat on the Town Council and start a local newspaper (The Desert Freedom Press) the false arrests began, the first of which occurred publicly on the steps of Town Hall before a Town Council meeting, related video viewable online at:

http://www.youtube.com/watch?v=BLIwGG70T1o

The resulting effects of engaging in those activities included but were not limited to, defamation of Plaintiffs by Defendants and other Town officials or their known associates (Jeffrey Gilbert decried the Desert Freedom Press and compared Jennifer Jones to Tucson gunman Jarrod Laughner at a Town Council meeting viewable online at 5:41 at:

http://www.youtube.com/watch?v=1zHOlbYWHdo&feature=related

while former Councilman Joe Winslow compared Citizens Coalition members, which

included the Plaintiffs and he mentioned Jennifer Jones aka "Jade" Harris by name in his

speech, to violent anarchist groups viewable online at 1:53 at:

http://www.youtube.com/watch?v=O9RBh_2NjxY

and suggested that if he could get them to sit in the front row he could just "machine gun

'em" viewable online at:

http://www.youtube.com/watch?v=WK65cMQlW5Q

and a friend of Gilbert stalked John Jones and created a video which was publicly posted

insinuating that John Jones might be a pedophile or murderer and instructing people to

contact "any law enforcement agency in the Quartzsite, AZ area" if they had information

viewable at:

http://www.youtube.com/watch?v=jJzvHhJQgE8 ), physical assault (Al Johnson

shoved Jennifer Jones while he was trespassing on property leased by the Plaintiffs, video

viewable online at: http://www.youtube.com/watch?v=xpZF8ryzP9s

and supporters of the Defendants have physically assaulted Jennifer Jones on five other

occasions without reprisal), physical injury (While exercising her First Amendment

rights, Jennifer Jones was permanently injured at a Town Council meeting by a QPD

officer acting under the immediate supervision of Jeffrey Gilbert at the direction of

Alexandra Taft and Al Johnson, video viewable online at:

http://www.youtube.com/watch?v=YPY3BIsVQq8 ),

the false arrests requiring the posting of bail, and the filing of numerous false

misdemeanor charges and false Town Code violations against Plaintiffs which over

roughly a three year period totaled five arrests (additional arrest video viewable online at: **http://www.youtube.com/watch?v=caT1N9TOLB4** )

and over seven hundred individual counts against Jennifer Jones, and two related arrests of John Jones, none of which has yielded even a single conviction.

Prior to asserting their First Amendment Rights to be critical of Town of Quartzsite government, Jennifer Jones had operated her pet service business and John Jones had lived for years in Quartzsite without any negative contact with Town officials.

The oppressive and conspiratorial behavior by Quartzsite officials against the Plaintiffs and a short list of their known associates who were specifically named as targets of political retribution by members of the Quartzsite Police Department (QPD) and the county attorney, came to a head and made national news when ten out of thirteen members of the Quartzsite Police Department filed a formal vote of no confidence in police Chief Jeff Gilbert at the June 14th, 2011 Town Council meeting, video viewable online at: **http://www.youtube.com/watch?v=Mle8sEMm4jA**

Subsequently, the Arizona Department of Public Safety (DPS) conducted three known separate investigations related to the conduct of the Defendants and their co-conspirators toward one or both of the Plaintiffs. In 2012, Plaintiffs obtained a copy of the complete and un-redacted DPS report DR 2011-027462 (Exhibit "A"). As quoted from in the Complaint, it contains the sworn statements of the police officers who attested to the disparate and egregious treatment the Plaintiffs suffered for their First Amendment activities, and a copy of the results of an official audit of the National Crime Information Center (NCIC) Criminal Justice Information Services (CJIS) database by DPS, which is incontrovertible evidence of the fact that the defendants were indeed background checked without articulable basis as alleged in the Complaint. After having their employment terminated, seven of those former Police Department employees submitted to and passed

lie detector tests relating to their statements made in DPS report DR 2011-027462 and in 2013 the Town settled the wrongful termination and whistle blower retaliation claim for $1.3 million.

The facts surrounding the malicious and retaliatory acts perpetrated on the Plaintiffs and their known associates was so well known and accepted as fact that La Paz County Attorney, Samuel Vederman (now Superior Court Judge of La Paz County) submitted a letter (Exhibit "B") to FBI Agent Farley (dated January 3, 2012) requesting an investigation *"into the Town and QPD"*. On January 12, 2012, former Quartzsite Town Prosecutor Matt Newman underscored Vederman's letter to the FBI, when he filed a Refusal of Appointment (Exhibit "C") to provide public defender services to criminal defendants in Quartzsite Magistrate Court Case No.CR20110155, stating as follows (excerpt) See Exhibit "B":

> *"It is also my belief that the current administration is specifically targeting certain individuals for prosecution due to their political views."*

## II. POINTS OF LAW FOR RULE 12(b)(6) MOTION

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint attacked for failure to state a claim does not need detailed factual allegations. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." Facial plausibility exists if the pleader pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged. Because Plaintiffs are proceeding pro se, the Court must construe their Complaint liberally, even when evaluating it under the Iqbal standard. Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1011 (9th Cir. 2001).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

Plaintiffs assert that the relevant non-conclusory allegations as acknowledged by the Defendants as well as any conclusory or non-conclusory allegations factually supported by exhibits attached hereto are more than sufficient to state a claim that is plausible on its face.

### a. **Plaintiff's Have Stated A First Amendment Claim**

Plaintiff's Complaint identifies two different First Amendment claims: (1) a violation of the right to free speech, and (2) a claim related to the retaliatory conduct by Defendants. Both of these have been sufficiently factually plead in the Complaint.

In order to state a claim for retaliatory prosecution under 42 U.S.C. §1983, a plaintiff must allege that defendants took action that would chill or silence a person of ordinary firmness from future First Amendment activities and that defendants' desire to cause the chilling effect was a but-for cause of defendants' action. Further, the plaintiff must plead and prove that the defendant lacked probable cause.

Plaintiff Jennifer Jones alleges that she is a person of extraordinary and nationally renown "firmness". Being arrested and prosecuted as much as she was, in such a short period of time would chill a person of ordinary firmness from future First Amendment activities. While exercising her First Amendment rights, she was falsely arrested for "tampering with a witness" for engaging in the journalistic practice of attempting to interview a woman about an upcoming trial, and falsely arrested for "trespassing" after attempting to interview police officers about an arrest. In one instance she was falsely arrested for "disorderly conduct" at the conclusion of a community information meeting for exercising her First Amendment right to silently display digitus impudicus toward a seated group of Town officials before the meeting had begun. In the most famous "viral" video incident, she was falsely arrested for speaking calmly but critically during the public comment portion of a Town Council meeting. All of Jennifer Jones' arrests except the initial arrest for calling 911 after being physically assaulted by Defendant Al Johnson were the direct result of her First Amendment activities.

Indeed, the well documented and well publicized treatment of the Plaintiffs as stated in this Claim has had a chilling effect on the community at large, as evidenced by reduced participation during public comment at Town meetings, reluctance or refusal on the part of citizens to file an open records request or a written complaint against Town officials, reluctance or refusal to serve on Town volunteer boards, reluctance or refusal on the part of voters to sign election petitions, and the reluctance or refusal of civic minded citizens to run for Town elected office. Defendant Alexandra Taft even hired a

private investigator to investigate voters on a list created for that purpose by

Town officials which included Jennifer Jones, readable online at:

**www.ci.quartzsite.az.us/Support%20Docs/Voter%20Fraud%20Exe%20Sum%201.html**

**www.ci.quartzsite.az.us/Support%20Docs/Voter%20Fraud%20Exe%20Sum%202.html**

Quartzsite again made national news when ousted council members refused to yield their

seats to newly elected candidates resulting in litigation. A citizen activist and friend of

the Plaintiffs was arrested for merely bringing his camera into Town Hall. Two other

community activists, also friends of the Plaintiffs, were arrested for writing disparaging

statements about Town government on the ground with children's chalk. Evidence and

numerous witnesses can be presented at trial to support these allegations of the Town

pattern and practice of First Amendment retaliation. Of immediate relevance, the

Defendants' actions have had a substantial chilling effect on the First Amendment

activities of Plaintiff John Jones. The resulting emotional distress has had such a

profound influence that he has nearly become a recluse and no longer attends Town

meetings, engages in protest, films public meetings or attends community events and it

has caused irreparable harm to the Plaintiff's marriage over the last several years.

Defendants' tyrannical conspiracy to make an example of the Plaintiffs and bring

about a community wide chilling effect is evidenced by the introduction of a timer to the

"Call to the Public" at Town council meetings, the purchase and use of a metal detector at

the entrance to Town meetings but not at the entrance to the Town Court, except on such

days when the Plaintiffs and their known associates were to appear in the courtroom, and the unprecedented and overbearing presence of Quartzsite Police at Town meetings and at polling places on election days.

Although the necessary elements exist in each false charge and false arrest, the allegation of retaliatory arrest is best illustrated by the provable facts surrounding Jennifer Jones false arrest for "tampering with a witness". To wit, while a candidate for Town Council, Jennifer Jones was publicly arrested in a crowded Post Office by Defendants Jeffrey Gilbert and Xavier Frausto, who initially refused to tell her what she was being arrested for, then refused to tell her who the "victim" was, video viewable online at:

**http://www.youtube.com/watch?v=mg9IGcmWvzc**

The next day she was arraigned by Justice of the Peace Karen Slaughter, who set her bail at $10,000. When Jennifer Jones questioned Slaughter about the unconstitutionally high bail, Judge Slaughter justified it by stating on the court record that she had an (ex parte) communication from the alleged "victim", whom Jennifer Jones had merely attempted to interview for her newspaper and who was coincidentally a member of the Town's Personnel Board responsible for recommending the termination of all the police officers who had formally complained about the targeting of the Plaintiffs. When Jennifer Jones reminded Judge Slaughter of her right to confront her accuser, Slaughter indicated that she would be willing to leave Jones in jail until they could find her another judge. After spending over twenty four hours in jail, Jones was released only to discover that the

felony charge from case IA2011-00128F had been vacated due to "no complaint filed" and that Quartzsite Police Detective Rick Paterson had made false and defamatory statements in her booking statement. Worse, an open records request to Judge Slaughter's court revealed that the ex parte statement from the so-called "victim" was nowhere in the court records. When Jones requested the "complete" police report, it referenced a statement by the so-called "victim" which was missing from the official report. A QPD employee indicated the statement, which actually contradicted critical elements of the police statements, had been *filed* in the evidence locker. Video interviews with the victim show Detective Paterson reading the applicable statute to the so-called "victim" and asking her what Jennifer Jones did that fit that statute. Video interviews with a witness were not conducted until nineteen days after Jones' arrest and two other witnesses were never interviewed at all. The Town Attorney initially refused to give Jennifer Jones a video copy of the actual incident, which occurred on the steps of Town Hall and after a subsequent request the video no longer existed. See exhibits "C" through "I".

Further, the lack of probable cause for the criminal complaints filed against the Plaintiffs raise issues that should be resolved by a jury. "[I]n a §1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury." Smiddy v. Varney, 665 F.2d 261,265 (9th Cir. 1981), cert. denied, 459 U.S. 829,103 S. Ct. 65 (1982); cited for the same proposition in McKenzie v. Lamb, 738 F.2d 1005 (9th Cir. 1984). "In general, the existence of probable cause in a §1983 action presents a jury question, unless there is only one reasonable determination

possible." Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995)

Therefore, the Plaintiffs' Complaint fulfills the requirements for First Amendment suppression and retaliation claims.

### b. **Plaintiffs Have Stated A Fourth Amendment Claim**

The key element of any search under the Fourth Amendment turns on reasonableness. In the matter at issue, Plaintiffs are not debating whether it is reasonable for a law enforcement officer to access the NCIC CJIS database pursuant to an arrest, a traffic stop (in fact, neither Plaintiff has ever been the subject of a traffic stop by the QPD), or even accessing the database pursuant to information obtained by a license plate check, although "police may not randomly stop a vehicle solely to check a driver's license or car registration because a seizure of this nature is arbitrary," Reynolds, 119 N.M. at 385, 890 P.2d at 1317 (citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)).

Probable cause is the linchpin of the Fourth Amendment. Probable cause is a quantum of evidence that is sufficient to lead a neutral judge to conclude that the person about whom the evidence has been presented is more likely than not to possess further evidence of criminal behavior, or has more likely than not engaged in criminal behavior that is worthy of the government's use of its investigatory tools such that the government may lawfully and morally invade that person's natural right to privacy. In this case, the narrowly tailored circumstances under which the private information contained in the NCIC CJIS database can be accessed is defined and restricted by the Federal Bureau of

Investigation, and to otherwise access the database is a criminal act. In short, "All records in NCIC are protected from unauthorized access through appropriate administrative, physical, and technical safeguards. These safeguards include restricting access to those with a need to know to perform their official duties," and "Users of the NCIC system will be restricted to only those privileges necessary to perform an authorized task(s)." See: http://fas.org/irp/agency/doj/fbi/is/ncic.htm

To justify an intrusion of this nature, the state must be able to point to specific and articulable facts, which, together with rational inferences drawn therefrom, reasonably warrant the intrusion. Yet, when even the police officers favored by Jeffery Gilbert and Xavier Frausto were questioned about the probable cause for the Plaintiffs being ran so many times even they could not offer any plausible explanation. Under the conditions established in this Claim, a "criminal history background check" cannot be construed as anything but an unreasonable search. It is facially plausible that the Defendants' participation in this search may rise to the level of criminal conduct.

As stated by the sworn testimony to DPS by members of their own Police Department and quoted from in the Claim, Defendants Gilbert and Frausto had an evil eye and improper motive for falsely arresting and repeatedly running background checks on the Plaintiffs, especially John Jones, who was ran while he was known to be out of state *"to see if they had done anything wrong while they were gone."*. Most disturbingly, John Jones was also ran with alternate middle initials despite having provided his military discharge papers and disclosed his identity in April, 2010, which was verifiable as of the

December 2010 arrest during which he was fingerprinted. Plaintiffs believe this was done conspiratorially in an effort to locate another John Jones with an extraditable warrant who might plausibly fit the physical description of the Plaintiff.

Defendant Gilbert exhibits unusual malice in that directly or under his supervision the Plaintiffs were inappropriately arrested for alleged misdemeanors that did not occur in the presence of an officer, instead of issuing a citation and notice to appear, his obsession *"to go get them"*, the Plaintiffs, *"what he calls the domestic terrorism people"* that allegedly led him to send an item of unknown origin and collection methods to the state crime lab in an effort to get John Jones' finger prints, and his submission of a long form complaint for felony election fraud to the county attorney wherein he was the complainant falsely alleging that candidate Jennifer Jones was not a resident.

Defendants Taft and Johnson had an improper motive because their failure to act to mitigate damaged after being formally notified of the facts and circumstances. At the very least they acted with deliberate indifference to the rights of persons on behalf of their employer, the people of Quartzsite which includes the Plaintiffs.

Further, the lack of probable cause for the excessive number of unexplained inquiries of the NCIC CJIS database raises issues that should be resolved by a jury. "[I]n a §1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury." Smiddy v. Varney, 665 F.2d 261,265 (9th Cir. 1981), cert. denied, 459 U.S. 829,103 S. Ct. 65 (1982); cited for the same proposition in McKenzie v. Lamb, 738 F.2d 1005 (9th Cir. 1984). "In general, the existence of probable cause in a §1983 action presents a jury question, unless there is

only one reasonable determination possible." <u>Pyles v. Raisor</u>, 60 F.3d 1211, 1215 (6th Cir. 1995)

Therefore, Plaintiff's allegations are sufficient to establish a Fourth Amendment claim.

### c. **Plaintiffs Have stated An Equal Protection Claim**

If the law "is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. Yick Wo v. Hopkins, 118 U.S. 356,373-74 (1886). The District Court dismissed the lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim under the Equal Protection Clause. Relying on Circuit precedent, the Court of Appeals for the Seventh Circuit reversed, holding that a plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a "'spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective.'" 160 F.3d 386, 387 (CA7 1998) (quoting Esmail v. Macrane, 53 F.3d 176, 180 (CA7 1995)). Quoting the per curiam opinion in Village of Willowbrook v. Olech, the Supreme court opined "Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, <u>260 U.S. 441</u> (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., <u>488 U.S. 336</u> (1989). In so doing, we have explained that "'[t]he purpose

of the equal protection clause of the <u>Fourteenth Amendment</u> is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Sioux City Bridge Co., supra, at 445 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)).

Defendants wrongfully assert that April 2011 is the most recent arrest date when in fact Jennifer Jones was falsely arrested on the "disorderly conduct charge" on June 28, 2011 and on the "tampering with a witness" charge on December 2, 2011. When considering the two year statute of limitations for 1983 claims, the "tampering with a witness" false arrest is not time barred as this complaint was filed August 28th, 2013. For the purposes of the Claim it must be noted that all of the false arrests occurred during the same time period of the NCIC database audit, contained in Exhibit "A" along with the subject matter in testimony that corroborated the Plaintiffs' allegation that they were all lacking in probable cause, which was not even discoverable until the summer of 2012. Therefore, they should not be time barred as they are essential to establish elements of the Claim, and indeed it would be difficult if not impossible to establish a claim for conspiracy and/or equal protection unless a pattern and practice can be established by showing the Defendants engaged in a policy enacted over time.

It is common knowledge that there are roughly 3,600 other residents of Quartzsite, 1,200 other vendors in Quartzsite with three other comparable businesses to the Plaintiff's, as well as hundreds of thousands of seasonal part time residents and yet only a small group of the Plaintiffs' known associates have been treated similarly but not

to the extreme degree that publisher Jennifer Jones has been treated by the Defendants. It is a matter of fact, not speculation that in the history of Quartzsite (and possible the history of Arizona) nobody has ever been treated like Jennifer Jones, because nobody else has been willing to remain firm in the face of such malicious, unjust and punitive treatment for over six years at the hands of corrupt municipal officials without moving away. Further, although the Plaintiffs were both arrested for "false reporting", those who made false reports against the Plaintiffs were never charged and the citizens who physically assaulted Jennifer Jones or her known associates were never arrested or charged, even when the assault occurred right in front of then Police Chief Gilbert or his officers.

There is sufficient probable cause that the Defendants' actions were not the product of "discretionary decision making based on a vast array of subjective individualized assessments", rather, their actions were made with impermissible motive and malice aforethought. The probable cause for this claim should also be determined by a jury,. However, sufficient non-conclusory factual allegations are contained in the Plaintiffs' Complaint and supported by the attached exhibits to state an equal protection claim.

### d. **Plaintiffs Have Stated A Municipal Liability Claim**

Whereas "a plaintiff must allege facts that support a reasonable inference that a 'policy or custom' – or lack thereof –was the 'moving force' behind the constitutional deprivation." See <u>Monell v. Department of Social Service of New York,</u>

436 U.S. 658, 691–94 (1978). However, "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S.at 690. Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991) offers additional insight into what constitutes a "policy." In Larez, the Court held that a police chief was "an official policymaker for the City on police matters.". The Court went on to state: "As to the City, the policies of the Police Department became its policies because the policies set by the Department and its Chief 'may be fairly said to represent official [City] policy' on police matters." quoting Shaw v. California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 611 (9th Cir.1986). "Moreover, the police chief's "statements, coming from a final policymaker on police matters, also properly could have been considered to represent the [the police department's] policy or custom….". Acting as Police Chief, Jeffrey Gilbert was a policy maker.

The Plaintiffs alleged in their Complaint that Defendant Town of Quartzsite through its officials and enforcement personnel has engaged in a long established policy, pattern and practice of harassing them. The Town of Quartzsite at a minimum was negligent or reckless in allowing it's officials and employees to repeatedly violate citizens' rights, including the Plaintiffs and failed to train and supervise them to protect citizens' rights, including the Plaintiffs, so that citizens could exercise their rights without reasonable fear of retaliation.

Nevertheless, a policymaker is not required to demonstrate a pattern of decisions or actions to rise to the level of policymaking. "Official liability may also be imposed where a first-time decision to adopt a particular course of action is directed by a governmentally authorized decision maker." Larez, 946 F.2d at 646. If a town manager is a policymaker, and the town manager's decisions represent the policy of the town, then Defendant Taft's actions as Town Manager as alleged in the Complaint were an exercise of the policies of the Town of Quartzsite.

Moreover, if Defendant Taft is a policymaker for the Town of Quartzsite, then it follows that Defendant Al Johnson acting in his capacity of "Assistant Town Manager" is also policymaker for the Town of Quartzsite, and his actions in his official capacities represent the policies of the Town of Quartzsite.

In sum, the constitutional deprivation that resulted from the actions of Defendants are sufficient for a claim against the Town of Quartzsite. For that reason, Plaintiff's allegations are sufficient for a municipal liability claim.

### e. Plaintiffs Have Stated A Conspiracy Claim

To plead a conspiracy under §1983, "a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." Young v. Suffock Cnty., 705 F. Supp.2d 183, 197 (E.D.N.Y. 2010). However, "A plaintiff is not required to list the place and date of the defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleading must present facts tending to

show agreement and concerted action." Fisk v. Letterman, 401F Supp. 2d 362, 376 (S.D.N.Y. 2005).

All named conspirators are jointly liable for the acts of their co-conspirators. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 253-54, 60 S. Ct. 811, 858, 84L. Ed. 1129 (1940); El Rancho, Inc. v. First National Bank of Nevada, 406 F.2d 1205, 1216 (9th Cir. 1968), cert. denied, 396 U.S. 875, 90 S. Ct. 154, 24 L. Ed. 2d 133 (1969); Standard Oil v. Moore, 251 F.2d 188, 211 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S. Ct. 1139, 2 L. Ed. 2d 1148 (1958). Therefore, each and every individual Defendant is jointly and severally liable for the foreseeable acts of their co-conspirators as though they committed the act. Akin v. Dahl, 661 S.W.2d 917, 1983 Tex. LEXIS 344, 27 Tex. Sup. J. 23 (Tex. 1983) (Noting once a conspiracy is found, each co-conspirator may be held liable for acts taken by the other co-conspirators in furtherance of the conspiracy). Each and every named Defendant as a member of the conspiracy is liable for the acts of the officials carrying out the conspiracy.

It is very likely that additional discoverable materials exist, in the other known DPS reports, and as to be revealed by an ongoing investigation being conducted by the Arizona Police Officers Standards and Training Board (that will yield a public report) in regards to whether or not to revoke Jeffrey Gilbert's and Xavier Frausto's law enforcement certification, which would corroborate the sworn testimony contained in Exhibit "A" in support of the claim of conspiracy. The fact that John Jones was falsely arrested twice yet background checked at least 263 known times, and with middle initials

that were reasonable known not to be his, cries out for testimony before a jury.

Furthermore, the individual Defendants are liable such that it cannot be proven otherwise on the pleadings alone and these issues should be reviewed by a jury.

### f.  Plaintiffs Have Stated A Claim For IIED

To prevail on a claim for intentional infliction of emotional distress (hereinafter "IIED"), a plaintiff must show that (1) the defendants' conduct was extreme and outrageous, (2) the conduct was either intentional or reckless, and (3) the conduct caused the plaintiff to suffer severe emotional distress. Ford v. Revlon, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). While a complaint is required to have more than mere conclusory allegations, it is not required to have detailed factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). For purposes of reviewing a motion to dismiss, the Court should deem non-conclusory allegations in the complaint to be true. Aschcroft v. Iqbal, 556 U.S. 662, 696 (2009). Here, Plaintiff has made factual allegations that there was a history of harassment against her by the Defendants, as well as by Town officials named in prior cases listed in the Plaintiffs' Claim and Defendants' Motion. This history came as a result of Plaintiffs' unwavering public criticism of the Town Council and enforcement officials. It included arresting Plaintiffs on frivolous charges. It has also included numerous meritless zoning and code violation charges, visits by Town enforcement personnel  based on "anonymous" complaints. These charges and were something more sinister than town officials simply trying to carry out their normal governmental function. The same is evidenced by the fact that DPS looked into the

matter and found that there were felony charges filed against, inter alia, Plaintiff Jennifer Jones, for which no criminal conduct had occurred. It is further evidenced by the fact that Quartzite police officers made formal allegations against the Quartzsite Police Chief Jeffrey Gilbert, for his use of the police force as a weapon against a very short list of perceived political opponents, including the Plaintiffs.

Prior to the release of DPS Report DR2011-027462, the Town Council and Defendant Gilbert were expressly trained by an attorney not to remove people from the podium for frivolous perceived violations of meeting rules and that it was the Mayor that presided over Town Council meetings. Despite this training, and consistent with the history of harassment, Plaintiff was forcibly removed and arrested for speaking critically of the Town Council during a call to the public at the June 28, 2011 Town Council meeting. Public outrage at viewing the video of the incident caused it to go "viral" and for almost two months Plaintiff was interviewed several times each week about alleged corruption in the Town of Quartzsite by national media, and is still being requested for interviews to this day.

Thus the non-conclusory factual allegations in the Complaint, deemed to be true for the purpose of resolving Defendants' motion, show that there was a history of harassment by Defendants, there was knowledge and specific training prohibiting Defendants' prior bad acts. To arrest and remove Plaintiff Jennifer Jones from a Town Meeting simply because you don't want to hear what she is saying amounts to extreme and outrageous conduct, so outrageous that the Town became the only municipality to

lose its insurance policy through the Arizona Municipal Risk Retention Pool. The Complaint, with its non-conclusory factual allegations deemed true for the purpose of resolving Defendants' motion, affirms that this conduct occurred. The first element of IIED is therefore satisfied by looking to the allegations in the Complaint. See Revlon, 153 Ariz. at 43, 734 P.2d at 585.

Because the Complaint describes a history of targeting Plaintiff for harassment through abusive governmental conduct, there are non-conclusory factual allegations describing the intentional nature of the prior bad acts, supported by the exhibits attached hereto. At worst, because there was prior training expressly teaching that the Town Council and police force were not to remove persons from calls to the public because of minor or frivolous protocol violations, the Defendants' actions were reckless in continuing bad faith behavior. The Complaint's non-conclusory factual allegations, deemed true for the purpose of resolving Defendants' motion, therefore show that Defendants intentionally or recklessly engaged in outrageous conduct and the second element of IIED is satisfied. See Revlon, 153 Ariz. at 43, 734 P.2d at 585.

Finally, although the Complaint does not go into great detail about the nature of Plaintiffs emotional distress and the irrevocable impact it has had on their lives, as described above, it details the systematic harassment that has been inflicted upon the Plaintiffs. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. To the extent that the Plaintiffs' emotional

distress is not expressly described in detail, it is a clear and reasonable inference arising from the allegations in the Complaint related to the emotional harm inflicted upon them, and the prolonged harassment they have had to suffer. The Complaint's non-conclusory factual allegations, deemed true for the purpose of resolving Defendants' motion, and the reasonable inferences that may be drawn therefrom, show that Defendants and their conduct caused the Plaintiffs to suffer emotional distress and the third prong of the IIED elements is satisfied.

Because the facts alleged in the Complaint, when deemed true for purposes of the Rule 12(b)(6) analysis, are sufficient to support a prima facie case of IIED, the Complaint withstands facial scrutiny. For that reason, Plaintiff's allegations are sufficient to claim IIED.

## III.    Duplicative Claims

Plaintiffs did not attempt to recover duplicative relief specific to the unique circumstances surrounding the June 28, 2011 and December 2, 2011 false arrests of Jennifer Jones but included them of necessity as factual allegations in support of this Claim. Although the Plaintiffs believed in good faith that the false arrests were part of coordinated campaign, belief and a given set of factual allegations may not have been enough to withhold a facial challenge to that assertion so those arrests were treated as separate stand-alone events at the time they were filed. It was not until the release of DPS report DR 2011-027462 that Plaintiffs had confirmation that their suspicions and beliefs were founded in fact and could be substantiated at trial. Because the sworn testimony

contained in DPS report DR 2011-027462 does not merely reference these particular false arrests in passing but repeatedly cites them as part of a broader conspiracy, they would be extremely difficult to separate out of the evidence specific to this Claim. Moreover, there is likely to be additional discoverable evidence contained in the other DPS reports or the forthcoming AZPOST report that correlates to these arrests.

Plaintiffs request that the court exercise its discretion and not bar the inclusion of these two false arrests at this time. Rather, Plaintiffs request that the court set aside this specific challenge for future consideration and rule only the remaining elements of this Claim that are currently being challenged by the Defendants. Should the Plaintiffs prevail in this Response then they would not object to consolidating cases.

## IV.    CONCLUSION.

WHEREFORE, for the reasons set forth above, the Complaint was sufficiently plead by the Plaintiffs as to all Counts and has set forth sufficient facts from which a jury could find in Plaintiffs' favor on each count. Plaintiffs therefore respectfully requests that this Court summarily deny Defendants' Motion to Dismiss.

Lastly, Plaintiffs respectfully reserve the right to amend the Complaint, and in the interest of justice moves the Court not to dismiss any legal claim as deficient in pleading if the deficiency may be remedied by amending the Complaint.


RESPECTFULLY SUBMITTED this 11th of July, 2014.

_____

Jennifer Marie Jones
In Pro Se

_____

John Lavern Jones
In Pro Se

Jennifer Marie Jones
John Lavern Jones
La Posa North LTVA
PO Box 1320
Quartzsite, Arizona 85346
928-785-6318
thedesertfreedompress@yahoo.com
In Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2014, I hand delivered the foregoing document to the Clerk's Office and to the following:

The Honorable Diane J. Humatewa

United States District Court
Sandra Day O'Connor U.S. Courthouse,
Phoenix, Arizona 85003

And mailed a copy to:

Lisa S. Wahlin
Ryley Carlock & Applewhite
One North Central Ave., Suite 1200
Phoenix, Arizona 85004-4417
Attorney for All Defendants

# INDEX TO EXHIBITS

## PLAINTIFF'S RESPONSIVE MEMORANDUM TO DEFENDANT'S MOTION TO DISMISS 2:13-CV-01770-DJH

Exhibit A – DPS Report DR 2011-027462 on CD

Exhibit B – January 12, 2012 Refusal of Appointment letter

Exhibit C – video of Jones arrest and in custody interview on CD

Exhibit D – video of victim and witness interviews on CD

Exhibit E – December 3, 2011 "booking statement"

Exhibit F – December 6, 2011 Release Order

Exhibit G – December 23, 2011 Open Records Request

Exhibit H – April 15, 2011 Open Records Request

Exhibit I – Quartzsite Police Department Open Records Request (statement)

# EXHIBIT A

# EXHIBIT B

**MATTHEW G. NEWMAN**
Attorney at Law
P.O. Box 1532, Parker, AZ 85344
Telephone # (928) 667-2607
Fax # (928) 667-2615
E-mail: mnewman@uneedspeed.net
State Bar # 013626

Attorney for Defendant,

**IN THE QUARTZSITE MAGISTRATE COURT OF THE STATE OF STATE OF ARIZONA IN AND FOR THE TOWN OF QUARTZSITE**

| | |
|---|---|
| STATE OF ARIZONA, | Case No.: CR20110155 |
| Plaintiff, | |
| vs. | **REFUSAL OF APPOINTMENT** |
| RICHARD ANTHONY MARTINEZ, | |
| Defendant | |

It appears that the court has appointed me to represent the defendant in the above-captioned case. It also seems that the court used the form that has been approved for appointment of indigent counsel for La Paz County.

This form was developed after approval of an agreement for reimbursement of counsel with the La Paz County Court system.

There is no such agreement with the Magistrate Courts. As no agreement has been reached, I respectfully refuse this appointment.

Moreover, I wish to inform this court that I will be unavailable to accept appointments in Quartzsite Magistrate Court in the future, at

any hourly rate. It is my belief that the current administration of the Town has created an inherent conflict of interest by appointing the Town Prosecutor as the Town Attorney and Town Parliamentarian. It is also my belief that the current administration is specifically targeting certain individuals for prosecution due to their political views.

As it is impossible to know in each particular case if the defendant may be one of those individuals, I do not desire to represent appointed clients at this time.

Upon information and belief, the current Public Defender is not being paid for his services, and I cannot in good faith enter into any agreement with an administration as tainted as the current one.

Therefore, I respectfully decline this appointment, and any other such appointments.

RESPECTFULLY SUBMITTED this _12th_ day of January 2012.

MATTHEW G. NEWMAN
Attorney for Defendant

Copy of the foregoing
placed in box this _12th_
day of January 2012, to:

Alex Taft
Manager for the Town of Quartzsite
(Mailed)

By: _Cathy Vander Weyden_
Cathy Vander Weyden

-2-

# EXHIBIT C

# EXHIBIT D

# EXHIBIT E

**Defendant's NAME** Jennifer Marie Jones      **DOB** 6-27-66    **BOOKING NO.** _____    **CASE NO.** 11-00734

2.  List any prior:
Arrests: _____
11-23-10: Obstructing Govenment Operations,False
Reporting to Law Enf., 5-5-2011:Treespassing, Failure to
Comply, False Reporting, 6-2011: Disorderly Conduct

Convictions: _____
All pendng.
_____
_____

Failures to Appear (FTA): _____
None known.
_____
_____

Protective Orders: _____
Injunction Prohibiting Harassment, arising out of this case
_____

3.  There is an indication of:
☐ Alcohol Abuse            ☐ Other Substance Abuse
☐ Mental Health Issues     ☐ Physical Illness
☐ Developmental Disability
Explain: _____
_____
_____
_____

4.  Defendant is employed by: Self
Address: Space H-1, 400 W. Main Street Quartzsite, Ariz. 85346
_____

Phone:  None known
How long: Approx. 3 years.

5.  Defendant resides at:
Last known: B.L.M. campground, south of Quartzsite,
Ariz.
With Whom: John "Jack" Jones-husband.
How Long: Approx. 2 months.
Alternate address for court notification: _____
Sopace H-1, Casa del Sol R.V. park, 400 W. Main Street
Quartzsite, Ariz. 85346.

6.  Facts to indicate defendant will flee if released: _____
Jones has no strong ties to the community and operates
a free-lance pet grooming business, in repeated violation
of Quartzsite Town Ordinaces, that require her to have a
business license.
_____
_____

7.  Reasons to oppose an unsecured release: _____
Jones has refused the service of civil summonses for
violating Town Ordinances in the past and wilfully stated
her refusal to comply.

**D.   CIRCUMSTANCES OF THE OFFENSE**

1.  ☐ Defendant used firearm or other weapon
Type: _____

2.  ☐ Defendant injured someone.
Explain: _____

3.  ☐ Medical attention was necessary
Nature of injuries: _____

4.  ☑ Defendant threatened someone
Nature of threats: To discredit, terrify victim, deter from tes -
_____ TIFYING,

5.  If property offense
a.  Value of property taken/damaged: _____
b.  ☐ Property was recovered

6.  Names of co-defendant(s), if _____
_____
_____

**E.   CRIME(S) AGAINST PERSONS**

1.  Relationship of defendant to victim: acquaintance.

2.  ☐ Victim(s) and defendant reside together.

3.  Law enforcement learned of the situation by ☑ Victim
☐ Third Party  ☐ Officer observation

4.  ☐ Previous incidents involving these same parties
Explain: Prior confrontations in Quartzsite.

5.  Defendant is currently the subject of:
☐ Order of Protection
☑ Injunction against Harassment
☐ Other court order: _____

6.  ☑ Likelihood of inappropriate contact with victim(s)
Explain: Has stated her disdain for victim and suspicions
of victim's background and fitness to serve as
A PUBLIC VOLUNTEER.

7.  ☑ Victim(s) expressed an opinion on defendant's release.
Explain: Victim is worried about defendant mobilizing her
ex-husband; a convicted felon, against her.

Form 4(a) 2 c

# EXHIBIT F

| [X] Quartzsite Justice Court<br>555 N. Plymouth<br>P.O. Box 580<br>Quartzsite, AZ 85346<br>928-927-6313 | [ ] Salome Justice Court<br>310 Salome Road<br>P.O. Box 661<br>Salome, AZ 85348<br>928-859-3871 | [ ] Parker Justice Court<br>1105 Arizona Ave.<br>Parker, AZ 85344<br>928-669-2504 | [ ] Quartzsite Magistrate Ct.<br>465 N. Plymouth Ave.<br>P.O. Box 583<br>Quartzsite, AZ 85346<br>928-927-7477 | [ ] Parker Magistrate Court<br>1314 11th Street<br>Parker, AZ 85344<br>298-669-0011 |
|---|---|---|---|---|

[ ]  Other Court: _____

| STATE OF ARIZONA<br>VS<br>**JENNIFER MARIE JONES** | CASE NO.<br><br>___IA2011-00128F___<br><br>Crim:_24138___ | **RELEASE ORDER**<br>and<br>**ORDER VACATING PRELIMINARY HEARING** |
|---|---|---|

~~TO THE SHERIFF OF THIS COUNTY. Greetings~~

The above named Defendant has been charged with or arrested for the following violations:

Count 1/A:  13-2804A-TAMPERING WITH A WITNESS F6 _____

Count 2/B: _____

Count 3/C: _____

Count 4/D: _____

Count 5/E: _____ and has:

[X]  NO COMPLAINT FILED within 48 hours of arrest.

[X]  IT IS ORDERED VACATING THE PRELIMINARY HEARING SCHEDULED FOR 12-13-11 AT 9:00 AM _____

[ ]  Entered a plea with this court and has been sentenced. He/she

    [ ]  Has been given credit for *time served* and has no other requirements.

    [ ]  Has entered into a *payment arrangement* with the court.

    [ ]  Has been placed on *probation*.

    [ ]  Is temporarily released from custody. He/she has been sentenced to _____ days in jail. He/she shall be credited with _____ days served. The balance of days are *suspended on proof* of compliance with all court orders/sentence requirements.

[ ]  O.R. Release

[ ]  Other: _____

You are hereby ORDERED TO RELEASE the said Defendant from further detention in the County Jail.

GIVEN UNDER MY HAND THIS 6 DAY OF DEC _____, 2011

_____
Justice of the Peace/Magistrate    (Seal)

# EXHIBIT G




# TOWN OF QUARTZSITE

465 North Plymouth Avenue • PO Box 2812 • Quartzsite, AZ 85346
(928) 927-4333 • Fax (928) 927-4400
Arizona Relay Service (928) 927-3762 (TDD)
we are an equal opportunity employer
www.ci.quartzsite.az.us


RECEIVED
DEC 2 3 2011
BY:

## PUBLIC RECORDS REQUEST
### (A.R.S. Title 39)

| Name: Jennifer Jones | | Date: 12-23-11 |
|---|---|---|
| Address: PO box 1320 | Phone: (928)785-6318 | Charges are based on fees established and listed on attached sheet. |
| City: Quartzsite | State: AZ | Zip: 85346 | Amount Due: $ |

**Please Note:** Active public records are in various locations. The Town request that a reasonable amount of time be expected for responding to any request to copy or inspect Town records. The Town may require additional time to process more difficult request and if so, an estimated time frame will be provided to the requestor.

Indicate whether you desire to inspect or copy public records: _____ Inspect

☒ Copy

Indicate whether you are using the public record for a commercial or non-commercial purpose:

_____ Commercial*   ☒ Non-Commercial

**Specifically describe the record requested for inspection or copying:** (The Town Clerk may return any written request without further processing if it lacks the specificity necessary to identify the public records or other matters to which access or copies is requested).

video of courtyard in front of Town Hall 11.22.11 from 9:00AM - 10:30 AM from the camera above the front door that faces the parking lot.

**"The Arizona public records laws require only that the Town produce copies of records that already exist. The law does not require that we compile statistics, customize reports, do research or create documents that do not already exist".** If this should be the case the requestor will be asked to set a time and date to come to Town Hall and inspect Town records. At that time the requestor can make notes, request copies and ask questions that may arise.

A.R.S. 39-121.03D-Commercial purpose includes any use of a public record for the purpose of sale or resale or for the purpose of producing a document containing all or part of the copy, printout or photograph for sale or the obtaining of names and addresses from public records to another for the purpose of solicitation or for any purpose where the purchaser can reasonable anticipate the receipt of monetary gain from direct or indirect use of the record. When a person requests copies of City records for commercial purposes, a statement setting forth the commercial purpose for which the copies will be used must be provided.

**Commercial Purpose Statement:**

| FOR RIM OFFICE USE ONLY: | REQUEST APPROVED: _____ |
|---|---|
| DATE RECEIVED: _____ BY: _____ | REQUEST DENIED: ☒ |
| DATE PROCESSED: 12-23-11 BY: TJ | COMPLETION DATE & INITIALS: |

OVER TWO MILLION VISITORS A YEAR

# MEMORANDUM

**To:** Town Clerk
**From:** Town Attorney
**Date:** December 23, 2011
**Subject:** Public Records Request of Jennifer Jones Dated 12/23/2011

It is the recommendation of the Town Attorney that the requested record be denied as overbroad. The 90-minute period requested involves the visual images of myriad civilians not engaged in public business each of whom has a privacy interest in their image and their activity which overcomes the presumption that the record is otherwise subject to disclosure.

If Ms. Jones believes that public business was conducted which can be viewed on the video which would not involve the invasion into the privacy of private individuals who are not engaged in public business, she should narrow the scope of that request to the specific time during which this public business occurred or to a description of the public business that she believes was transacted so that staff could determine which, if any, of the requested period contains public information.

Additionally, a $10 deposit and a blank non-rerecordable compact disc or digital versatile disc must be provided before any further action can be taken regarding a request for a video recording can be processed.

# EXHIBIT H



# TOWN OF QUARTZSITE

465 North Plymouth Avenue, PO Box 2812, Quartzsite, AZ 85346
PH. (928) 927-4333   Faz (928) 927-4400
Arizona Relay Service (928) 927-3762
we are an equal opportunity employer
www.ci.quartzsite.az.us

## PUBLIC RECORDS REQUEST

(A.R.S. Title 39)

Name: Jennifer Jones    Date: 4-15-13

Address: PO box 1320    Phone: (928) 785-6318

City: Quartzsite    State: AZ    Zip: 85346    Amount Due: _____

Charges are based on fees established and listed on attached sheet.

**Please Note:** Active public records are in various locations. The Town requests that a reasonable amount of time be expected for responding to any request to copy or inspect Town records. The Town may require additional time to process more difficult requests and if so, an estimated time frame will be provided to the requestor.

Indicate whether you desire to inspect or copy public records:  ☐ Inspect    ☐ Copy

Indicate whether you are using the public record for a commercial or non-commercial purpose: ☐ Commercial*    ☐ Non-Commercial

**Specifically describe the record requested for inspection or copying:** ( The Town Clerk may return any written request without further processing if it lacks the specificity necessary to identify the public records or other matters to which access or copies is requested.)

Video of courtyard in front of Town Hall on 11-22-11 from 9am to 10:30 am (from the camera above the front door, that faces the parking lot, or verification that none such exists.

**"The Arizona Public records laws require only that the Town produce copies of records that already exist. The law does not require that we compile statistics, customize reports, do research or create documents that do not already exist".**

A.R.S. 39-121.03D- Commercial purpose includes any use of a public record for the purpose of sale or resale or for the purpose of producing a document containing all or part of the copy, printout or photograph for sale or the obtaining of names and addresses from public records to another for the pubpose of solicitation or for any purpose where the purchaser can reasonable anticipate the receipt of monetary gain from direct or indirect use of the record. When a person requests copies of City records for commercial purposes, a statement setting forth the commercial purpose for which the copies will be used must be provided.

Commercial Purpose Statment: Non Commercial-private Interest

I hereby certify that the requested records are to be used for the above stated purpose(s).

_Signature of person requesting records_

FOR RIM OFFICE USE ONLY:

DATE RECEIVED:_____  BY: _____

DATE PROCESSED:_____  BY: _____

REQUEST APPROVED: _____

REQUEST DENIED: _____

COMPLETION DATE AND INITIALS:

_____

OVER TWO MILLION VISITORS A YEAR

APR 15 2013

RECEIVED
BY: TA



# TOWN OF QUARTZSITE

465 North Plymouth Avenue • PO Box 2812• Quartzsite, AZ 85346
Phone (928) 927-4333 • Fax (928) 927-4400
Arizona Relay Service (928)927-3762 (TDD)
We are an equal opportunity employer
www.ci.quartzsite.az.us

April 16, 2013

Dear Ms. Jones,

Concerning your public records request for a video of courtyard in front of Town Hall on 11-22-11 from 9 am to 10:30 am (from the camera above the front door that faces the parking lot, or verification that none such exits).

I am sorry, but we have no record of your request in our files.

Sincerely,

Terry Frausto, Town Clerk

OVER TWO MILLION VISITORS A YEAR

# EXHIBIT I

# Public Records Request Form

| DATE REQUEST MADE | 5 / 7 / 13 |
|---|---|

| Requestor Name | Company/Organization | REPORT NUMBER |
|---|---|---|
| Jennifer Jones | self | |

| Address | Apt/SP# | City, State | Zip Code |
|---|---|---|---|
| PO box 1320 | | Quartzsite AZ | 85346 |

| Phone Number | Secondary Phone Number | E-mail Address |
|---|---|---|
| (928)785-6318 | | |

**Purpose of Request - Select One:**

| ( ) Insurance | ( ) Victim of Crime | ( ) Government Agency |
|---|---|---|
| ( ) Public Disclosure | ( ) Student - Research | (X) Other - Describe: civil case |
| ( ) Neighborhood Information | ( ) Media request | |

**Information Requested - Select All that Apply:**

| (√) Traffic Accident Report | (√) Arrest Records | complete file on my |
|---|---|---|
| (√) Supplements/ Diagrams | (√) Crime Analysis Reports | arrest (Dec 2011) at the post |
| (√) Criminal Police Report | (√) UCR Statistics for a time period | office - complainant Dedise |
| (√) Address Incident History | (√) Audio CD/DVD | Florian to include in custody |
| (√) Photo CD/DVD | (√) Other ( Describe Right): Any | interview with Det. Paterson |

| The Quartzsite Police Department charges for certain services as follows: | |
|---|---|
| Criminal or Traffic Reports: | $5.00 (First 5 pages) ; $1.00 for each additional page after 5 |
| Address Incident History: | $7.00 Per Year, Per Address Searched |
| Audio Disc: | $25.00 Per Disc |
| Photo/Video Disc: | $25.00 Per Disc |
| Crime Analysis Statistics: | $25.00 |
| Other: | Additional fees may be required depending on your request and the resourced needed to fill it. You will be notified of the costs before completing the request if additional fees are required. |

| Date and Time of Occurrence | Type of Incident | Responding Officer |
|---|---|---|
| Dec 2011 | arrest | Gilbert Fausto |

| Other Parties Involved | Address of Occurrence | City |
|---|---|---|
| Florian | Quartzsite Post Office | Quartzsite, AZ |

**Name, Purpose for Request, Time Period Requested, Specific information requested:**

| Time Period / Date Range / Year | Type of Information (Be Specific) | Location or Geographic Region |
|---|---|---|
| | | |

| (X) Pick up in person (305 N Plymouth Ave. Quartzsite, AZ 85346) | Under penalty of perjury, I hereby declare the public records requested will not be used for Commercial Purposes. |
|---|---|
| ( ) Mailed (USPS - Valid postal address required above) | |
| ( ) Emailed (Valid email address required above) | Signature Jennifer M Jones |

**Police Department Use Only Below This Line**

| Date Request Received | Total Paid $ _____ | Date Information Released |
|---|---|---|
| | No Charge Victim ( ) | ( ) Mailed ( ) Picked up ( ) Emailed |
| Request Taken by: | Logged ( ) Ins. ( ) Public Dis. ( ) | Released by: |
| Approved by | | Receipt # |

# Public Records Request Form

| DATE REQUEST MADE | 6 / 3 / 13 |
|---|---|

**Requester Information:** Please write legibly and complete all boxes.

| Requestor Name | Company/Organization | REPORT NUMBER |
|---|---|---|
| Jennifer Jones | Self | 11-00734 |

| Address | Apt/Spc# | City, State | Zip Code |
|---|---|---|---|
| PO Box 1320 | | Quartzsite | 85346 |

| Phone Number | Secondary Phone Number | E-mail Address |
|---|---|---|
| (928) 785 6318 | | |

**Purpose of Request - Select One:**

( ) Insurance  ( ) Victim of Crime  ( ) Government Agency

( ) Public Disclosure  ( ) Student - Research  (X) Other - Describe: personal research

( ) Neighborhood Information  ( ) Media request

**Information Requested - Select All that Apply:**

( ) Traffic Accident Report  ( ) Arrest Records  (X) the 3 page complaint by Denise Elstian mentioned in 11-00734, but not included in file as previously requested

( ) Supplements/ Diagrams  ( ) Crime Analysis Reports

( ) Criminal Police Report  ( ) UCR Statistics for a time period

( ) Address Incident History  ( ) Audio  CD/DVD

( ) Photo CD/DVD  (X) Other ( Describe Right):

**The Quartzsite Police Department charges for specific requests as follows:**

| Criminal or Traffic Reports: | $5.00  (First 5 pages ) ; $1.00 for each additional page after 5 |
|---|---|
| Address Incident History: | $7.00 Per Year, Per Address Searched |
| Audio Disc: | $25.00 Per Disc |
| Photo/Video Disc: | $25.00 Per Disc |
| Crime Analysis Statistics: | $25.00 |
| Other: | Additional fees may be required depending on your request and the resourced needed to fill it. You will be notified of the costs before completing the request if additional fees are required. |

**Details of Requested Item:**

| Date and Time of Occurrence | | Type of Incident | Responding Officer |
|---|---|---|---|
| Other Parties Involved | Address of Occurrence | City Quartzsite, AZ | |

Name, Purpose for Request, Time Period Requested, Specific information requested:

| Time Period / Date Range / Year | Type of Information (Be Specific) | Location or Geographic Region |
|---|---|---|

Purpose and Description of Statistical Data Request, or other details to publish data or information requested (Be Specific)

A review of your request will be completed and forwarded to the appropriate unit for completion or returned if it cannot be completed. How would you like information delivered once it is completed?

(X) Pick up in person (305 N Plymouth Ave. Quartzsite, AZ 85346)

( ) Mailed (USPS - Valid postal address required above)  Under penalty of perjury, I hereby declare the public records requested will not be used for Commercial Purposes.

( ) Emailed (Valid email address required above)  Signature _Jennifer Jones_

| Date Request Received | Total Paid $ 5.00 | Date Information Released 6/4/13 |
|---|---|---|
| 6/3/13 | No Charge Victim ( ) | ( ) Mailed (X) Picked up ( ) Emailed |
| Request Taken by: T. Rios | Logged ( ) Ins. ( ) Public Dis. ( ) | Released by: T. Rios |
| Approved by J. Gilbert | | Receipt # 936104 |

Denise Ann Florian

When I was leaving the town
meeting around 10am Jennifer
Jones was sitting outside with a
RIP for freedom. When I walked pass
her she looked at me and said
I hope your prepare to go to court
on the 14th your going to lose. I Started
to laugh and I said why because
of my colorful past and don't
be surprise with the two people that
were comming in from California to
testify agains me.. And she said
she had 3 wittness that were going
to be there to testify that I grabed
her at Taco Tuerr one night

I stopped and said wtf are
you talking about more lies I never
laid a hand on you. Michael and
Andy were there and saw the
whole thing. I said you to her
your so f— stupid and all her
lies were going to get her introuble
and that I really don't
care who she brought in from CA who
she said was my ex boyfriend and,
the whole 9 minke. both have Criminal I

records a mile long. I said bring
it on she didn't scare me. She said
after these people testify Dana
was going to walk. Jennifer said
they have so much Dirt on me
that Dana's case ~~did it~~ will be
thrown out because there going
to proof me a lear. I told her
you can try to do anything you
want. I have nothing to worry
about. She said Orange County
Superior Court has all kinds of
things on you. I said wow
what 2 unlawful Detainer one
I one and the other my ex Boyanyou
friend stole money from me. ~~and~~
I told her she was really a
Stupid bitch and the Color of her
hair was way to Colorful. and
she looked like shit. and if she
was trying to scare me it wasn't
working. I told her that if she
didn't stop f— with me and
my new friend she needed to
watch out Im not ~~your~~ one of
these people who are friends of mine

That you can keep bullying over
and over because I'm not afraid
of someone like her and she doesn't
didn't scare me. I told her she
was a piece of shit and was so
low class that she needed to get
a life because I won't back down
from her. And she could ask
anyone of my kids family or
friends she said I can't get
any lower then you and that I
was so low that she could just
step on me and squash me like
a bug and no one would ever know.


Denise Florio          11/26/11

RECEIVED 11-26-2011 @ 1050 hrs.
G.C. Peterson #9-43
11-00734